**Manu PATEL, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 93–2633.

United States Court of Appeals, Seventh Circuit.

Argued March 2, 1994.

Decided March 25, 1994.

Josette M. Skelnik (argued), Elgin, IL, for Manu Patel.

Stephen Heinze (argued), Crim. Div., Barry R. Elden, Asst. U.S. Attys., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

Before POSNER, Chief Judge, and CUMMINGS, and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Manu Patel was convicted by a jury of four counts of violating federal narcotics laws in connection with the importation of hashish from India. He was sentenced to seventeen and one-half years in prison. This court affirmed his conviction and sentence. *United States v. Patel*, 879 F.2d 292 (7th Cir. 1989), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 494 (1990). Patel then filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, which the district court denied. Patel appeals the district court's failure to hold an evidentiary hearing on his § 2255 motion. Patel also argues that he was denied the effective assistance of counsel and that the prosecutors engaged in misconduct, thereby denying him a fair trial. We affirm.

## I. FACTS

On January 27, 1988, United States customs inspectors discovered approximately 2700 pounds of hashish in a shipment that purported to be furniture and artifacts. The shipment, sent by Navin Sheth ("Sheth") of the Apex Trading Agency, originated in Bombay, India, and its destination was Illinois, to the home of Manu Patel, owner of Global Impex, Inc. Inspectors allowed the shipment to be delivered to a storage warehouse, as arranged by Patel, although the shipment was accompanied by federal agents. Patel later attempted to move the crates from storage and was arrested. When told of the illegal contents of the crates, Patel showed surprise and, claiming he had nothing to hide, agreed to cooperate with the government.

At the government's request Patel made a recorded telephone call to Sheth in which he told Sheth that a crate had broken open and he discovered the hashish. This call, and others made by Patel, were translated and transcribed by two interpreters. The translation by the second interpreter of one phone call contained the term "gold," another term for hashish, while the first did not.

After Patel made the recorded calls, the government drafted a letter of agreement

which Patel signed. The letter stated, in pertinent part:

> [T]he government seeks a proffer of the testimony of your client, Manu Patel, regarding the facts underlying the investigation. . . . Anything related to the government by you or your client during the proffer cannot and will not be used against your client, Manu Patel, in the government's case-in-chief or at sentencing. However, the government is completely free to pursue any and all investigative leads derived in any way from the proffer, which could result in the acquisition of evidence admissible against your client in subsequent proceedings. Likewise, nothing shall prevent the government from using the substance of the proffer for impeachment or in rebuttal testimony should your client subsequently testify contrary to the substance of the proffer.

Patel was then interviewed by prosecutors, DEA agents and United States customs agents. Patel informed them that this was the third shipment he had received from Sheth, the first two containing Indian spices and groceries. Patel stated that after each shipment, Sheth came to Chicago and two men took a portion of the shipment to New York in a rental truck. During this interview, Patel also related that under Sheth's direction his son, Mayur Patel, had met several times with various men and had given them large sums of money.[1] Patel later was indicted.

Patel testified at trial. On direct examination, Patel's attorney elicited information from him regarding money transactions, his alleged lack of knowledge of the contents of the shipment, and his statement that the word "gold" had never been used in his conversation with Sheth. On cross-examination, the government used Patel's proffered testimony to impeach him.

Evidence presented at trial disclosed that a man named Joshi was involved with the drug conspiracy and that one of his roles was to arrange for the deposit of drug proceeds in certain bank accounts in London, Geneva, and Dubai. Patel testified that he did not know anyone named Joshi and in fact had heard the name for the first time in the first recorded telephone conversation with Sheth. Patel also testified that he had been in India between October 1987 and January 1988 to develop a seafood importing company. His diary, admitted at trial without objection, indicated that he had met with "Joshi of Bank of Boroda" on January 15, 1988. A DEA report submitted at trial indicated that the man named Joshi suspected of being involved with the conspiracy was Joshi Kishore, who was arrested in Miami prior to April 1988. In closing argument, the government questioned Patel's veracity based on his testimony that he did not know anyone named Joshi and his diary entry referring to Joshi. The government also argued that the Joshi with whom Patel had met in India was the same Joshi who was involved with the drug conspiracy.

During the trial, evidence was presented in detail about the conspiracy members' importation and distribution of the hashish. This evidence included the transfer of funds, the delivery and sale of the hashish, transportation via a truck with a hidden compartment, the deposit of large sums of cash into Patel's bank account and subsequent distribution of that money by Patel, and additional recorded calls made by Patel.

## II. DISCUSSION

In his § 2255 motion, Patel asserted two claims he did not raise on appeal: ineffective assistance of counsel and prosecutorial misconduct.[2] Patel does not ask this court to grant his § 2255 motion, but rather requests a remand of the case to the district court for an evidentiary hearing on these issues. "Although a defendant has the right to file a motion under section 2255, his filing does not automatically give him the right to an evidentiary hearing." *Ebbole v. United States*, 8 F.3d 530, 534 (7th Cir.1993) (citing *Liss v.*

---

1. Mayur was called as a witness by the prosecution at trial, without objection from Patel's attorney.

2. On direct appeal, this court addressed the only claim that arguably had merit, whether Patel was a member of the conspiracy after he began cooperating with the authorities. *Patel*, 879 F.2d 292.

*United States,* 915 F.2d 287, 290 (7th Cir. 1990)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1229, 127 L.Ed.2d 573 (1994). Section 2255 requires that a district court grant a hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255; *accord Oliver v. United States,* 961 F.2d 1339, 1343 n. 5 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992).

■ Rule 8 of the Rules Governing Section 2255 Proceedings states that the district court shall "determine whether an evidentiary hearing is required." If it is not required, the judge "shall make such disposition of the motion as justice dictates." The district court need not hold a hearing in every case where the petitioner makes factual allegations. *Aleman v. United States,* 878 F.2d 1009, 1012 (7th Cir.1989). As the presiding judge at Patel's trial, Judge Kocoras's familiarity with this case made him "uniquely suited to determine whether a hearing was necessary." *Id.; see Ebbole,* 8 F.3d at 534 ("The court was familiar with the case, having handled it from the start."). We will consider the merits of Patel's claims in order to determine whether the record conclusively shows he was entitled to no relief.

### A. Ineffective Assistance of Counsel

■ On appeal, Patel argues that he was denied the effective assistance of counsel. This claim was not made on direct appeal,[3] but the district court, relying on *United States v. Taglia,* 922 F.2d 413, 418 (7th Cir. 1991), held that because Patel relied on extrinsic evidence in making this claim, he was not barred from bringing it for the first time in a post-conviction proceeding. "[I]f a defendant postpones raising the issue of ineffective assistance of counsel until the collateral stage he must have a valid reason for the postponement." *Guinan v. United States,* 6 F.3d 468, 472 (7th Cir.1993); *cf. United States v. Davenport,* 986 F.2d 1047,

1050 (7th Cir.1993) ("a defendant who presents an ineffective assistance claim for the first time on direct appeal has little to gain and everything to lose"). This court has recognized that a petitioner may raise an ineffective assistance of counsel claim in a § 2255 proceeding when his claim is based on extrinsic evidence. *Taglia,* 922 F.2d at 418. In this case, the letter agreement was not part of the record on direct appeal. Therefore the district court correctly addressed the merits of Patel's effective assistance claim.

■ To prevail on this claim, Patel must show that his counsel's performance was deficient and that this deficiency prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *United States v. Levine,* 5 F.3d 1100, 1108 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1224, 127 L.Ed.2d 569 (1994). A petitioner can satisfy the performance prong of *Strickland* by identifying specific acts or omissions that fell outside the wide range of professionally competent assistance. *Lilly v. Gilmore,* 988 F.2d 783, 785 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 154, 126 L.Ed.2d 116 (1993). However, Patel bears a heavy burden in overcoming the presumption that counsel rendered reasonably effective assistance. *See, e.g., Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *United States v. Moralez,* 964 F.2d 677, 683 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992). The prejudice prong focuses on whether counsel's deficient performance deprived the defendant of a fair trial. *Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064). Patel points to several instances of counsel's ineffectiveness. Each will be addressed in turn.[4]

#### 1. The Letter Agreement

■ Patel argues that his counsel's failure to object to his son's testimony prejudiced

---

3. Patel's counsel here also represented him on direct appeal.

4. The translator who testified at trial was the subject of deportation proceedings. Defense counsel agreed with the government not to question the translator about this subject. Patel argued in the district court that this amounted to ineffective assistance of counsel. Patel abandons this issue on appeal.

him. Patel claims that the government violated the agreement by calling his son as a witness based upon information he related during one of the interviews. Patel told agents that while he and Sheth were in India, Patel's son Mayur withdrew money from Patel's accounts and delivered the cash to individuals he was directed by Sheth and Patel to meet at shopping malls.

Patel concedes he did not receive immunity under 18 U.S.C. § 6002, but argues that under the doctrine of equitable immunity the government was precluded from using information he provided in its case-in-chief. By this, we understand Patel to mean that the letter prohibits the government from using the information that he provided in this criminal case. In *United States v. Eckhardt*, 843 F.2d 989, 995 (7th Cir.), *cert. denied*, 488 U.S. 839, 109 S.Ct. 106, 102 L.Ed.2d 81 (1988), this court explicitly reserved judgment on the existence of a general doctrine of equitable immunity. See *Arkebauer v. Kiley*, 985 F.2d 1351, 1359 (7th Cir.1993). The court need not address the doctrine in this case either, for the language of the letter agreement is unambiguous that the government was free to pursue investigative leads contained in Patel's proffer.[5]

The dispute between the parties stems from how information gathered from interviews with Patel could be used. The word "subsequent" in the letter agreement presents the difficulty here: "[T]he government is completely free to pursue any and all investigative leads derived in any way from the proffer, which could result in the acquisition of evidence admissible against your client in *subsequent* proceedings." (emphasis added). He argues that "subsequent" proceedings precludes the use of the information in the government's case-in-chief.

We agree with the district court's analysis that the use of "subsequent" in this sentence refers to the use of any information at any proceeding subsequent to the letter agreement.[6] The language that the government is free to pursue any and all investigative leads derived from the proffer makes it clear that Patel was not being given immunity as he claims. See *United States v. Cahill*, 920 F.2d 421, 424 (7th Cir.1990), *cert. denied*, 500 U.S. 934, 111 S.Ct. 2058, 114 L.Ed.2d 463 (1991) ("a person making a proffer of testimony does not necessarily receive immunity"). The indirect use of the information Patel provided was not protected from use by the government. Therefore, Patel's trial counsel did not err in failing to object to the government's calling of Patel's son as a witness.

■ Next, Patel argues that counsel was ineffective when he opened the door on his direct examination of Patel to the introduction of information that was protected from use by the letter agreement. Patel cannot succeed in arguing that this strategy fell outside the wide range of professionally competent assistance. See, e.g., *Lilly*, 988 F.2d at 785. A defendant has a right to take the stand, *see Riggins v. Nevada*, ⸺ U.S. ⸺, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992), and Patel does not allege that he was coerced to take the stand by counsel or that he was not informed of the content of counsel's examination. Further, counsel's strategy of providing some evidence of a legitimate business arrangement between Patel and Sheth in order to support Patel's claimed lack of knowledge about the hashish is within the wide range of professionally competent assistance. Considering counsel's decision in light of the totality of the circumstances, *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, counsel's choice was well within the range of professionally reasonable judgments.

### 2. Failure to Call a Witness

■ Patel also argues that he was prejudiced by defense counsel's failure to call the

5. Counsel for the government stated at argument that this is the only case he is aware of where the U.S. Attorney's standard letter of agreement has been called into question. Despite this assurance, we believe that the letter could be drafted more artfully to remove any doubt as to the terms of the agreement.

6. The district court held that "the letter unambiguously provides that any evidence acquired as a result of the investigative leads derived from Patel's proffer could be used against Patel in the case-in-chief, the sentencing, or any other proceeding subsequent to these.... In other words, the government was completely free to pursue any and all investigative leads derived in any way from the proffer-period."

first translator to testify, regarding the absence of the word "gold," another word for hashish, in her translation. The effect of this failure, he argues, was to give the jury the impression that Patel was familiar with and freely used this code word.

██ Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, *United States ex rel. McCall v. O'Grady*, 908 F.2d 170, 173 (7th Cir.1990), and prove that this witness's testimony would have produced a different result. *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1014 (7th Cir. 1987). Here, Patel only points to the absence of the word gold in the first translation. Given the overwhelming evidence against him, the use of the term gold cannot be said to have so affected the jury's verdict that the witness's testimony would have made a difference. Further, when Patel testified at trial, he explained parts of the transcript from his recorded phone conversation with Sheth, including testimony that the word gold was not used by either him or Sheth. The first translator was not a key witness, *see United States v. Gray*, 878 F.2d 702, 712 (3d Cir.1989), or an alibi witness, *see Montgomery v. Petersen*, 846 F.2d 407, 414–16 (7th Cir.1988), and the evidence presented at trial overshadows the testimony this translator would have provided. Counsel's failure to call the first translator did not prejudice Patel, even when considered in combination with the alleged letter agreement errors.

## B. Prosecutorial Misconduct

Patel asserts that the alleged breach of the letter agreement by calling Mayur to testify amounts to prosecutorial misconduct. Patel also claims that the government improperly argued in closing that Patel had met with Joshi, who was allegedly involved with the conspiracy, even though they knew or should have known that Joshi had been arrested before the alleged meeting.[7]

7. In fact, Joshi Kishore was arrested on November 19, 1987, before Patel's alleged meeting with

██ Patel has waived this argument by not raising it on direct appeal. However, we may review this claim if Patel shows cause for and prejudice from his failure to raise it on direct appeal. *See Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988). Patel argues for the first time in his reply brief that the information necessary to raise this claim, namely the arrest date of Joshi Kishore, was not available to him on direct appeal. Although he does not frame this argument in terms of cause and prejudice, Patel asserts that this lack of information excuses his failure to raise the issue on direct appeal. Even if this constituted cause, Patel cannot demonstrate that he was prejudiced by the government's remarks.

██ In analyzing claims of prosecutorial misconduct, the court first must determine whether the statements made by the prosecutor are improper. If so, the court must look at the remarks in light of the entire record to determine if defendant was deprived of a fair trial. *United States v. Badger*, 983 F.2d 1443, 1450–51 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993); *United States v. Goodapple*, 958 F.2d 1402, 1409–10 (7th Cir. 1992). If prosecutorial misconduct is so serious that it poisons the entire atmosphere of the trial, the error violated defendant's due process rights. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (only prosecutor's comments that "so infected ... the trial with unfairness as to make the resulting conviction a denial of due process" result in a constitutional violation); *United States v. Pirovolos*, 844 F.2d 415, 425 (7th Cir.), *cert. denied*, 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988). Even in cases of extreme misconduct, a reviewing court examines the entire record to determine whether the petitioner received a fair trial. *See, e.g., United States v. Mazzone*, 782 F.2d 757, 763 (7th Cir.), *cert. denied*, 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 84 (1986).

The record does not suggest that Patel was denied a fair trial or that the entire

him in India.

atmosphere of the trial was poisoned by the prosecutor's questions to Patel surrounding his knowledge of Joshi or the reference that the Joshi Patel met with in India was the same man involved with the conspiracy. Additionally, Patel cannot support his allegation that the prosecutors deliberately misrepresented the facts or lacked good faith in arguing them. *See Pirovolos*, 844 F.2d at 424. Without more, this court will not hold that the prosecutors engaged in misconduct.

## III. CONCLUSION

The district court's refusal to hold an evidentiary hearing was proper because Patel's motion and the record conclusively show that Patel is not entitled to relief.

AFFIRMED.