Lourenzy STONE, a/k/a Lorenzo L. Stone–Bey, Petitioner–Appellant,

v.

Robert A. FARLEY and Pamela Carter, Indiana Attorney General, Respondents–Appellees.

No. 95–1796.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1996.

Decided June 14, 1996.

Kimball R. Anderson, Peter J. McCarthy (argued), Winston & Strawn, Chicago, IL, for Petitioner–Appellant.

Thomas D. Quigley (argued), Laurel Taback Twinney, Office of the Attorney General, Indianapolis, IN, for Respondents–Appellees.

Before CUMMINGS, BAUER, and MANION, Circuit Judges.

MANION, Circuit Judge.

Twenty years ago, when he was seventeen years old, Lorenzo Stone and four other men attempted to rob a bar in Gary, Indiana. During the abortive robbery, Stone shot and killed a bar patron. The robbers fled. Stone was eventually arrested and confessed to participating in the robbery. The State of Indiana charged Stone with felony murder. Despite his confession, Stone pleaded not guilty and stood trial. He was convicted and sentenced to prison for life. The Indiana Supreme Court affirmed the conviction. Stone thereafter pursued postconviction relief, first through the state courts and then through this petition to the federal district court for a writ of habeas corpus. Stone alleges he received ineffective assistance of counsel, both at trial and on appeal. We affirm the district court's denial of the writ.

## I.

### A. *The Crime* [1]

On the night of February 25, 1976, Stone and four confederates, Elliot James, Rozelle Barber, Ira "Bobo" Rogers, and "Johnny Goon" Williams, set out to rob Mona's Lounge, a bar in Gary, Indiana. While one stood lookout, the other four entered the bar and announced a holdup, demanding that the patrons get to the floor. At least two of the robbers were armed. One of the bar patrons was also armed and a firefight ensued in which the patron was mortally wounded, although not before he shot and wounded one of the robbers. The robbers then fled.

### B. *The Investigation*

The police obtained from the bar's patrons general descriptions of the robbers and learned that at least one of the robbers had been shot. Checking at area hospitals, the police discovered that Rogers had been treated for a gunshot wound. That and the descriptions of witnesses confirmed Rogers' participation in the attempted robbery. The police also determined that Rogers had a criminal record and they were able to identify his known associates. Armed with this information, the police detained Stone along with Rogers' other associates for questioning. Stone provided a statement in which he claimed only to have been present at Mona's Lounge. He later confessed to police that he took part in the robbery.

At the time he was arrested, Stone was seventeen. However he told the police he was nineteen. The police confirmed his age against at least one prior arrest report. Believing Stone was an adult, the police questioned him and permitted him to sign a *Miranda* waiver without notifying his parents as required by Indiana law. Prior to the grand jury hearing, the police learned Stone had lied about his age so he would be placed

---

[1]. The Supreme Court of Indiana has twice considered Stone's case. *Stone v. State,* 268 Ind. 672, 377 N.E.2d 1372 (1978); *Stone v. State,* 587 N.E.2d 672 (Ind.1992). Pursuant to 28 U.S.C. § 2254(d), absent evidence in the record to the contrary, federal courts are to consider presumptively correct the factual findings of a state court of competent jurisdiction. *Kavanagh v. Berge,* 73 F.3d 733, 735 (7th Cir.1996). We do so here, and derive Stone's story from those facts.

in the adult section of the jail where he could smoke.

Following the robbery, John Means, an eyewitness to the robbery, informed the police that he had particularly noticed one of the robbers who was carrying a gun. However, Means was unable to pick Stone's picture out of a photo array. But at a lineup Means was able to identify Stone. He later again identified Stone at trial.

## C. The Trial

The five robbers were jointly indicted. James entered a plea agreement wherein he agreed to testify against the others. The remaining four, including Stone, were tried together. As part of its proof against Stone, the state introduced Stone's confession, which had references to his confederates redacted. As part of its proof against Williams, Williams' confession was introduced, likewise redacted to exclude the names of his confederates.

When the state called James to testify against Stone and Williams, he reneged on his plea agreement and refused to implicate his coconspirators as he had done in his plea statement. As a result, the court declared James a hostile witness and permitted the state to cross-examine him. The state thereafter impeached James by introducing his earlier statement in which he had described the botched robbery and the roles the various defendants had played in the robbery. Of particular concern to Stone was James' statement that as they fled the scene following the firefight, Stone yelled repeatedly: "I think I killed him. I think I killed him." Pursuant to Indiana rules of evidence, the jury was permitted to consider James' earlier statement not only for impeachment purposes, but also as substantive evidence against Stone. The jury convicted Stone of felony murder on October 16, 1976, and the court sentenced him to prison for life.

## D. Post–Conviction

Stone appealed his conviction to the Indiana State Supreme Court, which considered several allegations of pretrial and trial error in his prosecution. In Stone v. State, 268 Ind. 672, 377 N.E.2d 1372 (1978), the court rejected Stone's arguments that his confession had been obtained in violation of state law due to Stone's age and that James' prior statement had been improperly admitted for impeachment and as substantive evidence. The court also ruled that even if codefendant Williams' redacted statement had been admitted in error, an issue it declined to decide, the error "was harmless beyond a reasonable doubt." Id. at 1376.

Having lost on direct appeal, Stone collaterally attacked his conviction in state court, alleging he had received ineffective assistance of counsel.[2] The Indiana Supreme Court eventually rejected Stone's claims in Stone v. State, 587 N.E.2d 672 (Ind.1992). Stone claimed that his trial attorney was ineffective for failing to challenge his Miranda waiver and confession based on the police department's failure to notify his parents. Citing their earlier decision on this very issue in Stone's direct appeal as the law of the case, the Indiana Supreme Court refused to reconsider the issue on collateral review.

The court also repudiated Stone's argument that his trial counsel had been ineffective for failing to challenge the legality of his arrest. The court ruled that the evidence in the record supported the decision of the police to bring in the known associates of Williams after Williams was identified as one of the robbers.

The court further rejected Stone's assertion that his trial counsel was ineffective for failing to challenge the lineup identification wherein witness Means identified Stone. Although Stone was wearing the same fur-trimmed orange jacket at the lineup that he apparently wore during the abortive robbery and murder, the court distinguished the cases cited by Stone and held that because

---

**2.** Stone also filed a premature federal petition for a writ of habeas corpus which was dismissed without prejudice, first by the district court in *Stone–Bey v. Duckworth*, No. S87–560 (N.D.Ind. November 6, 1987), and then on appeal by this court in *Stone–Bey v. Duckworth*, No. 87–2891 (7th Cir. April 4, 1988).

the witness was emphatic at trial that his identification was based on Stone's facial appearance, counsel was not ineffective for failing to raise the issue.

In addition to alleging the above errors attributable to ineffective assistance of trial counsel, Stone alleged his appellate counsel afforded ineffective assistance of counsel for failure to raise the same errors on appeal. The supreme court rejected this claim on the same grounds that it rejected the claims on the basis of the trial record. Finally, just to cover all bases, Stone alleged that his post-conviction counsel below had also been ineffective. The supreme court rejected this claim as well.

### E. *Petition for Habeas Corpus*

Armed with new counsel, Stone moved on to federal court to pursue the same claims rejected by the Indiana Supreme Court in his direct appeal and collateral attack. Stone also raised a number of new claims. The district court dismissed the new claims as procedurally defaulted because Stone failed to raise them in state court. *See Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir.1992), *cert. denied,* 508 U.S. 962, 113 S.Ct. 2935, 124 L.Ed.2d 685 (1993) (issue that could have been presented to state court, but was not, may not be addressed in federal habeas corpus proceedings). Seven assertions remained, six of which have been pursued on this appeal: (1) the lack of probable cause for Stone's arrest; (2) the admission of James' statement; (3) the state's failure to notify Stone's parents prior to obtaining his confession; (4) the admission of Means' identification of Stone; (5) the admission of codefendant Williams' redacted confession; and (6) the claim overriding all the others—the ineffective assistance of counsel at trial, on appeal, and in post-conviction proceedings, as demonstrated by the failure to advance the above arguments. The district court thoroughly considered and rejected these claims and denied the petition.

## II.

■ When considering a district court's denial of a petition for writ of habeas corpus we review questions of law de novo, *Verdin v. O'Leary,* 972 F.2d 1467, 1481 (7th Cir.1992),[3] but defer to factual determinations by the state and appellate courts as presumptively correct. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981); *Rodriguez v. Peters,* 63 F.3d 546, 554 (7th Cir.1995).

■ The long procedural history of this case generates several layers of analysis. Trial counsel challenged probable cause for arrest; however, appellate counsel failed to pursue the issue. Trial counsel preserved the issue of Stone's confession, the introduction of Williams' redacted confession, and the introduction of James' statement, and appellate counsel pursued all three, albeit unsuccessfully. Neither trial nor appellate counsel raised the issue of Means' identification, although the issue was raised on state collateral review as an ineffective assistance of counsel claim. To the extent issues are procedurally defaulted, petitioner relies on allegations of ineffective assistance of appellate counsel as the "cause" of the default, raising the question of whether there was "prejudice." *McCleese v. United States,* 75 F.3d 1174, 1179–80 (7th Cir.1996) (to support claim that ineffective assistance of counsel was cause of procedural default requires showing that assistance was deficient and that the performance thereby prejudiced proceeding). Thus even if ineffective assistance of counsel was cause for default, the petitioner still must demonstrate that he was prejudiced by his attorney's failure to raise those claims. *Id. Strickland v. Washington* advises us that we need not conduct the full two-step ineffective assistance analysis. 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984). Instead, we may begin with the second step which assumes, *arguendo,* that the petitioner has satisfied the first element but then inquires whether that fail-

---

**3.** The "Antiterrorism and Effective Death Penalty Act of 1996." (Pub.L. No. 104–132, 110 Stat. 1214) was signed into law on April 24, 1996, while this case was pending on appeal. We need not determine to what extent the Act's amend-

ments to federal habeas review govern cases pending when the Act became effective because we determine that even under the more expansive scope of review prior to the Act, Stone was not entitled to federal habeas corpus relief.

ure caused the defendant to be wrongfully convicted. *Id.; Ebbole v. United States,* 8 F.3d 530, 533 (7th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1229, 127 L.Ed.2d 573 (1994). We seek to determine whether "counsel's performance prejudiced the defendant such that it rendered the proceedings fundamentally unfair or the results unreliable." *Hollenback v. United States,* 987 F.2d 1272, 1275 (7th Cir.1993) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 368, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993)). If the error did not undermine confidence in the verdict then no relief will be granted.

### A. Probable Cause for Stone's Arrest

Stone alleges his trial and appellate counsel failed to adequately challenge his arrest, which he claims was without probable cause. The Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 3052–53, 49 L.Ed.2d 1067 (1976), prohibits this court from deciding on collateral review whether evidence from an unconstitutional arrest was improperly introduced at trial when the state has provided an opportunity for full and fair litigation of the issue. While Stone's trial counsel unsuccessfully raised the issue, his appellate counsel failed to pursue it on direct appeal, which precludes Stone from raising the issue here except insofar as he submits it as proof of ineffective assistance of counsel. *Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). As such we analyze the issue through the *Strickland* analysis of whether the failure to raise the issue resulted in prejudice. In this case, Stone raised the issue in his post-conviction ineffective assistance of counsel appeal. The Indiana Supreme Court fully considered and rejected the issue on its merits as part of its ineffective assistance analysis. *Stone v. State,* 587 N.E.2d at 674. We can infer from this that the Indiana Supreme Court would also have rejected the argument had it been raised on direct appeal. We therefore conclude, as did the state supreme court, that Stone was not

prejudiced by his counsel's failure to pursue the issue on direct appeal. Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel. *Cf., Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

### B. Stone's Confession

Stone was seventeen when arrested. He lied about his age to the police, telling them he was nineteen so that he would be placed in the adult section of the jail where he could smoke. The police verified his age against prior arrest reports, not knowing that he had also lied about his age to the officers writing those reports.[4] Believing he was nineteen, the police did not call Stone's parents before obtaining his *Miranda* waiver and confession. Indiana law, but not federal law, required such a call. Stone's appellate counsel raised the issue on direct appeal and lost. The state supreme court rejected Stone's claim that his confession was inadmissible because of his age and took the opportunity to narrow the holding of *Lewis v. State,* 259 Ind. 431, 288 N.E.2d 138 (1972), which required such parental notification:

> [W]here the police do not flaunt the rule of *Lewis* or seek to circumvent its requirements, but make a good faith and diligent effort to implement it in making the determination of the age of the suspect, and are frustrated in such effort by the misstatement of the suspect as to age, then and in that event, as a matter of state law, the requirements of *Lewis* will be deemed satisfied.

*Stone v. State,* 377 N.E.2d at 1374. Because neither federal statutory nor constitutional law requires that a juvenile's parents be notified prior to obtaining a confession, *Fare v. Michael C.,* 442 U.S. 707, 725–27, 99 S.Ct. 2560, 2571–73, 61 L.Ed.2d 197 (1979) (determination of juvenile's waiver dependent not on age but on totality of circumstances); *Johnson v. Trigg,* 28 F.3d 639, 642 (7th Cir.

---

**4.** Stone disputes the Indiana Supreme Court's findings on this issue. While we view those findings as presumptively correct, we examine the record to determine if they are supported by the evidence. Stone's argument that at the time

of the state grand jury proceedings the police knew his real age does not undermine the court's finding that at the time of Stone's arrest the questioning officers believed him to be the age he stated.

1994) ("no rule deeming teenagers, even slow ones, incapable of rational choice"), Stone may not be granted federal habeas relief on this issue. *Brewer v. Aiken*, 935 F.2d 850, 854–55 (7th Cir.1991). The matter is purely one of state law. "We do not sit as a super state supreme court to review error under state law." *Id.* at 855 (quoting *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir.1983)).

### C. *Admission of James' Statement*

■ The state struck a plea agreement with Elliot James, one of Stone's conspirators, in which James agreed to testify against his confederates. At trial James turned on the state and attempted to provide an alibi for Stone. James was declared a hostile witness and the state impeached him with the statement he provided the court at his change of plea hearing. In that statement James fingered Stone, describing how Stone confessed "I think I killed him" as they fled the bar. This would have been admissible as direct testimony against Stone had James testified. Under Indiana's extant rules of evidence, the jury could consider the prior statement not only as impeachment but also as direct evidence of Stone's guilt. *Patterson v. State*, 263 Ind. 55, 324 N.E.2d 482 (1975).[5] In this case, James was in court, under oath, and available for cross-examination by Stone, negating confrontation problems. We again emphasize, we do not second-guess state supreme court interpretations of state law. *Brewer v. Aiken, supra; Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Stone would not have prevailed on this issue had his trial counsel pursued it; the Indiana Supreme Court fully considered and rejected Stone's argument on direct appeal. *Stone v. State*, 377 N.E.2d at 1375. Stone thus suffered no prejudice.

### D. *Means' Identification of Stone*

■ Eyewitness John Means, who was a patron in the bar, described to police the distinctive orange-colored jacket Stone was wearing during the robbery. Apparently Stone was arrested wearing the same jacket and continued to wear the jacket at the police line-up where Means identified him. Stone's counsel succeeded in preventing the prosecutor from introducing a photograph of the line-up at trial, but did not at trial or on direct appeal challenge Means' identification of Stone. Means identified Stone at trial by walking over to him and placing his hand on Stone's shoulder. Means testified that he was identifying Stone because he "knew what he looked like" and because he had recognized him "when I saw him again." However Means also admitted that during the robbery it had been Stone's jacket that stood out most in his mind. Stone did raise this issue in his post-conviction appeal for ineffective assistance. The state supreme court held that the failure to raise the issue was harmless due to Means' in-court identification which was based solely on Stone's facial appearance. Stone essentially challenges the credibility of Means' identification, arguing it was infected by a suggestive line-up. Federal courts do not reevaluate the credibility of witnesses when conducting habeas review of state trials. *Chandler v. Richards*, 935 F.2d 915, 918 (7th Cir.1991). Stone contends his trial and appellate counsel should have argued that the suggestive line-up infected the witness' subsequent in-court identification. Even if that were so, the failure to challenge the identification did not prejudice Stone because of the strength of the other evidence against him. The only purpose for Means' identification was to place Stone in the bar; Means was lying on the floor when the shooting occurred. He testified he had not observed it. But the jury did not need Means' testimony to place Stone in the bar because Stone himself admitted he was in the bar participating in the robbery but denied

---

5. *Patterson* was overruled by the Indiana Supreme Court in *Modesitt v. State*, 578 N.E.2d 649, 653–54 (Ind.1991), wherein the court adopted the text of Federal Rule of Evidence 801(d)(1)(A). While the new rule likely would prohibit the jury from considering James' prior statement as direct evidence, *Modesitt* explicitly declined to give the new rule retroactive applica-

tion to any previously-determined case. *Modesitt* at 654. The change in rules was based not on the Indiana Supreme Court's determination that the *Patterson* rule was unconstitutional, but rather because it had become unworkable. *See Mason v. Duckworth*, 74 F.3d 815, 817–18 (7th Cir. 1996) (discussing *Patterson* and *Modesitt*).

shooting the dead bar patron. Therefore counsels' failure to challenge the identification had no effect on the outcome of Stone's trial.

### E. *Codefendant Williams' Confession*

At trial, the confessions of both Stone and his codefendant Williams were introduced in redacted form to comply with the requirements of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Stone argues his counsel at trial should have challenged the admissibility of Williams' redacted confession. Citing *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987), and *United States v. Kreiser*, 15 F.3d 635, 639 (7th Cir.1994), he alleges the statement was not properly redacted to eliminate not only his name but any reference to the existence of another person who participated in the robbery. While we do not believe either cited case would support Stone's argument, in conducting a habeas review of a trial we look to whether the trial was conducted according to constitutional norms at the time the conviction became final. *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989), *Boyer v. United States*, 55 F.3d 296, 299 (7th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 268, 133 L.Ed.2d 190 (1995). Therefore Stone may not challenge his trial by citing decisions that may or may not restrict the use of redacted codefendant confessions beyond those that controlled in 1978 at the time the Indiana Supreme Court affirmed his conviction. Whether *Richardson* or *Kreiser* would or would not prohibit the use of Williams' redacted confession is thus not relevant. The law as it stood in 1978 permitted such use. *See, e.g., United States v. Holleman*, 575 F.2d 139, 143 (7th Cir.1978) (refusing to extend *Bruton* to statements redacted to exclude names but not existence of codefendants). Stone argues that despite the fact that references to him were redacted out of Williams' confession, the jury was able to "fill in" the redactions because of Stone's own confession, James' statement describing the robbery and reporting Stone's admission, as well as other evidence implicating Stone. While it may be true that the overwhelming evidence against Stone would permit a jury

to determine Stone's role in Williams' redacted confession, *see, e.g., United States v. Hubbard*, 22 F.3d 1410, 1421 (7th Cir.1994) (rejecting "contextual implication" argument where other evidence links defendant with properly redacted statement), *cert. denied*, — U.S. —, 115 S.Ct. 762, 130 L.Ed.2d 660 (1995), that overwhelming evidence also confirms that whatever counsel's error, failing to challenge the redaction was not prejudice. Even had Stone's attorney succeeded in preventing the introduction of Williams' confession in its entirety, it would have been of little avail to Stone. The jury still would have found Stone guilty beyond a reasonable doubt based on his own confession and the statement of his confederate James.

### III.

Accordingly, for the foregoing reasons, we AFFIRM the district court's denial of Lorenzo Stone's petition for a writ of habeas corpus.