**Diego GIL, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**No. 97 C 1121.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 31, 1998.

Diego Gil, Oxford, WI, pro se.

Patrick Sean Layng, U.S. Attorney's Office, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is petitioner Diego Gil's motion to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255. For the following reasons, petitioner's motion is denied.

## I. BACKGROUND

Petitioner Diego Gil ("Gil"), along with Vincente Echeverri ("Echeverri"), was charged with conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (Count I) and attempting to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (Count II). A jury found Gil guilty on both counts.

On Count I, the court sentenced Gil to a term of 210 months confinement to be followed by ten years of supervised release. The court imposed an identical sentence on Count II. Both periods of confinement and supervised release were to run concurrently.

Gil appealed. The Seventh Circuit affirmed his conviction and sentence. *United States v. Gil,* Nos. 94–1713, 94–1959, 46 F.3d 1134, 1995 WL· 23136 (7th Cir. Jan.19, 1995). Gil now collaterally attacks several aspects of his conviction and sentence pursuant to 28 U.S.C. § 2255.

## II. DISCUSSION

### A. Standard for deciding a § 2255 motion

█ Relief under § 2255 "is reserved for extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir.1996). To succeed on a § 2255 motion, the petitioner must demonstrate that the sentence imposed on him was in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Arango–Alvarez v. United States,* 134 F.3d 888, 890 (7th Cir.1998).

█ A § 2255 motion "is neither a recapitulation nor a substitute for a direct appeal." *Olmstead v. United States,* 55 F.3d 316, 319 (7th Cir.1995). This means that [a]n issue not raised on direct appeal is barred from collateral review· absent a showing of both good *cause* for the failure to raise the claims on direct appeal and

actual *prejudice* from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice.

*Prewitt,* 83 F.3d at 816.

### B. Ineffective assistance of counsel

█ Gil first argues that he is entitled to relief under § 2255 because he was denied his Sixth Amendment right to effective assistance of counsel. This claim was not raised on direct appeal; however, as Paul Wagner ("Wagner") was Gil's trial and appellate counsel. Gil may bring this claim in his § 2255 motion. *United States v. Taglia,* 922 F.2d 413, 418 (7th Cir.1991).

A petitioner's claim that his counsel was ineffective is analyzed under the two-prong test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show ineffective assistance of counsel, the petitioner must show (1) that his counsel's performance fell below an objective standard of reasonableness (the performance prong) and (2) that this deficiency prejudiced the petitioner (the prejudice prong). *Arango–Alvarez,* 134 F.3d at 892.

█ As to the performance prong, the petitioner must show that "counsel made errors so serious that counsel was not·functioning as the 'counsel' guaranteed [to] defendant by the Sixth Amendment." *Strickland,* 466 U.S. at ·687, 104 S.Ct. 2052. In determining whether counsel's performance was deficient, the court must "judge ... counsel's challenged conduct on the· facts of the particular case, viewed at the time of counsel's conduct." *Id.* at 690, 104 S.Ct. 2052.

█ As to the prejudice prong, the petitioner must show that his counsel's deficient performance rendered the outcome .of his trial or proceeding unreliable or fundamentally unfair. *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Mason v. Hanks,* 97 F.3d 887, 892–93 (7th Cir.1996). While it is essential to petitioner's claim that he prove both prongs of the *Strickland* test, *Eddmonds v. Peters,* 93 F.3d 1307, 1313 (7th Cir.1996), "[i]t is often beneficial for courts to consider the prejudice prong of *Strickland's* test before delving into

murkier questions of whether certain acts or decisions constituted reasonable legal advocacy." *Winsett v. Washington,* 130 F.3d 269, 280–81 (7th Cir .1997). If the court finds no evidence of prejudice, the court need not determine whether counsel's performance was deficient. *Melvin v. United States,* 78 F.3d 327, 329 (7th Cir.1996).

■ In this case, Gil points to several instances of Wagner's alleged ineffectiveness. Because counsel is presumed effective, Gil bears a heavy burden to prove that Wagner was ineffective and his defense was prejudiced. *Barker v. United States,* 7 F.3d 629, 633 (7th Cir.1993). The court addresses each of Gil's arguments below.[1]

### 1. Failure to conduct an investigation

■ Gil first argues that Wagner was ineffective because he failed to conduct an investigation into the issue of "who the cocaine was destined for." Pet. at 7, 10–13. Specifically, Gil argues that Wagner should have pursued certain leads which could have produced evidence that showed that the cocaine was not intended to be delivered to Gil but was actually intended to be delivered to a party in Memphis. Gil contends that it was "likely" that the result of his trial and sentencing would have been different if such evidence had been produced.

The court rejects Gil's claim because he has failed to show that this alleged failure to investigate affected either the outcome of his trial or sentencing proceeding. First, Gil has failed to show that the alleged failure to investigate affected the outcome of his trial. The government did not have to prove that the cocaine was originally intended to be delivered to Gil. *See* 21 U.S.C. §§ 841(a), 846. What the government had to prove is that Gil conspired or attempted to commit the offense of possession with the intent to distribute the cocaine, which consists of (1) the knowing possession of the cocaine and (2) an intent to

distribute it. *United States v. Marin,* 7 F.3d 679, 688 (7th Cir.1993); *see* Trial Transcript (hereinafter "Trial Tr."), Dec. 10, 1993 at 537–542. Thus, the alleged evidence was not critical to Gil's defense, and Gil could not have suffered prejudice from his counsel's alleged deficiency. *See United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir. 1997).[2]

Arguably the alleged evidence might have been relevant to the jury's determination of the credibility of the government's witness Jose Appedole. That is to say, if Wagner proved that the cocaine was originally intended to be delivered to an individual in Memphis and not to Gil in Chicago, then the jury might have found that Appedole was not a credible witness and, thus, that nothing to which he testified occurred. However, Wagner brought out several other points of impeachment during his cross examination of Appedole. Trial Tr. at 250–327. Further, Wagner spent a significant portion of his closing argument explaining to the jury different reasons why Appedole was not a credible witness. Trial Tr. at 505–23. Thus, having reviewed Wagner's cross examination of Appedole and closing argument, the court finds that Wagner's alleged failure to pursue this line of impeachment did not constitute ineffective assistance of counsel.

Gil has also failed to show that Wagner's alleged failure to investigate affected the outcome of his sentencing proceeding. For the purposes of sentencing, it was irrelevant whether the cocaine was originally intended to be delivered to Gil or to someone in Memphis. Rather, at Gil's sentencing, the relevant issue was the amount of cocaine for which Gil could be held accountable. *See Gil,* 1995 WL 23136, at *5–11. From the evidence, the court found that Gil could be held accountable for all thirty-eight kilograms. *See* Tr. from Petitioner's Apr. 12, 1994 Sentencing Proceeding (hereinafter "Sent. Tr.") at 6. This finding was affirmed

---

1. The court notes, however, that it refuses to address Gil's meritless argument that Wagner was ineffective because he "was unspecialized in Constitutional Law and was thus rendered ineffective by his mere appointment." Traverse to the Government's Resp. at 17.

2. The evidence might have been relevant to an entrapment defense; however, an entrapment instruction was not given to the jury, Trial Tr. 535–542, because Gil was not entitled to such an instruction, Trial Tr. 465–469; *see also United States v. Casanova,* 970 F.2d 371, 375 (7th Cir. 1992).

on appeal. *See Gil,* 1995 WL 23136, at *5–11. Even if the cocaine originally was intended to be delivered to someone in Memphis, the fact is that the evidence supported the conclusion that Gil conspired and attempted to possess with an intent to distribute the cocaine during the transactions in question.

## 2. Failure to object to the federal indictment

Gil next argues that he was denied his right to effective assistance of counsel because Wagner failed to object to the federal indictment. Gil presents three arguments as to why Wagner should have objected to the federal indictment, each of which the court addresses below.

▮▮▮ Gil's first argument is that Wagner should have objected to the federal indictment on the grounds that it was improper because Gil had already been arrested by the State of Illinois. Gil's argument, however, is in direct contradiction with the dual sovereignty doctrine. Under the dual sovereignty doctrine, two sovereigns may prosecute a person for the "same" conduct if it violates the laws of each. *United States v. Zarnes,* 33 F.3d 1454, 1470 (7th Cir.1994). With respect to a defendant who is prosecuted by both a state and the federal government, the federal indictment often follows the state arrest and/or prosecution. *See United States v. Rector,* 111 F.3d 503, 507 (7th Cir.1997). Accordingly, the fact that the State of Illinois had arrested Gil before the federal indictment of Gil had issued was not a basis for objecting to the federal indictment and, thus, Wagner was not ineffective because he failed to make that argument. *See Stone v. Farley,* 86 F.3d 712, 717 (7th Cir.1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

▮▮▮ Gil's second argument is that Wagner should have objected to the federal indictment on the grounds that Gil's federal statutory and constitutional right to a speedy trial had been violated. The facts of this case, however, show that Gil had no such claim. *See* 18 U.S.C. § 3161(c)–(h); Docket of Case No. 93 CR 166 at 5, 6, 8, 9. Thus,

Wagner was not ineffective because he failed to make the argument. *See Stone,* 86 F.3d at 717.

Gil's third argument is that Wagner should have objected to the federal indictment on the grounds that the federal prosecution of Gil was a "sham prosecution." The gist of Gil's argument is the State of Illinois used the federal prosecution as a tool to prosecute Gil because Illinois was running out of time to commence its prosecution of Gil. *See* 725 ILCS § 5/103–5. Gil does not argue that such a "sham prosecution" violated the Double Jeopardy Clause of the Fifth Amendment. Rather, Gil argues that the "sham prosecution" violated his Fifth Amendment right to due process, his Sixth Amendment right to a speedy trial, and his Fourth Amendment right to be free from unreasonable search and seizure.

▮▮▮ The case of *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), "supposedly recognized an exception to the dual sovereignty doctrine in situations where one sovereign's prosecution serves as a tool for a second sovereign that previously prosecuted the defendant." *United States v. Brocksmith,* 991 F.2d 1363, 1366 (7th Cir.1993). The "sham prosecution" exception provides that "when sovereign A's prosecution serves merely as a 'cover and tool' for sovereign B such that sovereign A's prosecution can be called that of sovereign B, the prosecution by sovereign A is barred it if would be barred to sovereign B." *United States v. Paiz,* 905 F.2d 1014, 1024 (7th Cir.1990).

There are several problems with Gil's argument that his counsel should have objected to the federal prosecution on the grounds that it was a "sham prosecution." The first and most basic problem is that Gil could never show the requisite prejudice, which is evidenced by the fact that the court rejected Echeverri's (Gil's co-defendant) motion to dismiss the indictment on the grounds that the federal prosecution was a "sham prosecution." Addressing the "sham prosecution" argument, the court stated:

> [Echeverri] has not sufficiently alleged circumstances of a sham prosecution....

Echeverri alleges that his state and federal prosecutor are the same person, and that therefore his federal prosecution is a sham.... But this allegation of shared personnel does not raise an issue of sham prosecution.... Echeverri also summarily asserts that it is "fundamentally unfair" and a "Due Process" violation "to require an accused to defend two simultaneous prosecutions for the same offense where the only independent interest in the latter prosecution is enhanced penalties ." Adopting such a broad theory would challenge the entire dual sovereignty doctrine, which, absent special circumstances not established here, recognizes each sovereign's interest in pursuing penalties under its own laws.

*United States v. Echeverri,* No. 93 CR 166, 1993 WL 356919, at *3 (N.D.Ill. Sept.13, 1993).

The second problem with Gil's "sham prosecution" argument is that Gil has not cited and the court is unaware of, any Supreme Court or Seventh Circuit cases which discuss the *Bartkus* exception outside the context of a double jeopardy claim. The underlying rationale for prohibiting sham prosecutions was the suggestion of double jeopardy. *Rector,* 111 F.3d at 507. Thus, it is not clear that the *Bartkus* exception would apply to claims for constitutional violations other than a violation of the double jeopardy clause.

The third problem with Gil's "sham prosecution" argument is that the Seventh Circuit has repeatedly rejected claims of sham prosecution. *See United States v. Tirrell,* 120 F.3d 670, 677 (7th Cir.1997); *Rector,* 111 F.3d at 507; *Brocksmith,* 991 F.2d at 1367; *Paiz,* 905 F.2d at 1024. In fact, the court could not find a single Seventh Circuit case which found that a sham prosecution existed under the facts of the case, even in a case analogous to this case. *See Paiz,* 905 F.2d at 1024. In this vein, the Seventh Circuit has repeatedly reiterated its position that "the [*Bartkus* ] exception, if it exists at all, is a very narrow one." *Tirrell,* 120 F.3d at 677.

■■■■■ The fourth problem with Gil's "sham prosecution" argument is that if there is such a thing as a "sham prosecution," this is not the case. As explained in *Echeverri,*

the circumstances of this case do not amount to a "sham prosecution." Gil's conduct violated federal law; thus, the federal government had a right to prosecute him, regardless of the state's prosecutorial efforts. It is true that John Kornak, an assistant state's attorney for Lake County, acted as a special assistant United States attorney in this case. The participation of Kornak, however, was not only undeniably legal, it was welcomed. *See* 5 U.S.C. § 3372; *Rector,* 111 F.3d at 507; *Brocksmith,* 991 F.2d at 1366; *Paiz,* 905 F.2d at 1024; *see also Bartkus,* 359 U.S. at 123, 79 S.Ct. 676 Further, "[e]ven significant cooperation between federal and state agencies is not enough to make the second prosecution a 'sham.'" *Tirrell,* 120 F.3d at 677. The fact that the federal indictment came after Gil was already arrested by the state and while the state allegedly only had a limited number of days within which to commence prosecution of Gil shows nothing. *See Rector,* 111 F.3d at 507; *Paiz,* 905 F.2d at 1024 n. 14. Thus, the facts of this case do not even hint at the conclusion that the federal prosecution of Gil was a "sham prosecution." Accordingly, Wagner's failure to object to the federal indictment on the grounds that the federal prosecution was a "sham" in violation of various of Gil's constitutional rights did not constitute ineffective assistance of counsel.

### 3. Failure to object to the presence of Kornak at counsel's table

■■■■ Gil next argues that Wagner was ineffective because he failed to object to the presence of Kornak at counsel's table. Gil argues that the presence of Kornak, an Illinois prosecutor, allowed "the government of the State of Illinois to continue its prosecution of Petitioner even though that sovereign had surrendered its prosecution to the federal government" and "provided the federal prosecutor with an unfair prosecutorial advantage." Pet. at 9, 13.

Petitioner has not cited, and the court is unaware of, any case law which supports Gil's argument. Kornak's participation in the federal prosecution as a special assistant United States attorney was "undeniably legal" and "an example of the typical (and desired) co-

operation between state and federal authorities." *Rector*, 111 F.3d at 507; *see also Brocksmith*, 991 F.2d at 1366; *Paiz*, 905 F.2d at 1024. There were simply no grounds for Wagner to object to the presence of Kornak and, thus, Wagner's failure to do so could not constitute ineffective assistance of counsel. *See Stone*, 86 F.3d at 717.

### 4. Failure to raise the issue of vindictive prosecution

Gil next argues that Wagner was ineffective because he failed to raise the issue of vindictive prosecution. Gil contends that two facts show that his federal prosecution was vindictive: (1) the fact that he refused to cooperate with the federal authorities who sought his cooperation[3] and (2) the fact that his federal indictment issued only after Gil insisted on exercising his right to a trial by jury in state court.

In order to show a vindictive prosecution, the defendant must show that he was prosecuted to punish him for exercising a legally protected statutory or constitutional right. *United States v. Goulding*, 26 F.3d 656, 662 (7th Cir.1994). To compel discovery on a vindictive prosecution claim, the defendant "must show a colorable basis for the claim." *Benson*, 941 F.2d at 611 (citing *United States v. Heidecke*, 900 F.2d 1155, 1159 (7th Cir.1990)). To obtain a hearing on a vindictive prosecution claim, the defendant must "offer sufficient evidence to raise a reasonable doubt that the government acted properly in seeking the indictment." *United States v. Benson*, 941 F.2d 598, 611 (7th Cir.1991); *see United States v. Cyprian*, 23 F.3d 1189, 1196 (7th Cir.1994).

In this case, there is simply no evidence, not to mention "colorable" evidence or evidence "sufficient to raise a reasonable doubt," that the federal prosecutor acted improperly in seeking the indictment of Gil. Gil's unsupported allegation that the federal prosecutor only indicted him because he chose not to cooperate with federal authorities is not sufficient to raise a colorable vindictive prosecution claim. *See United States*

v. *Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996). Likewise, Gil's unsupported claim that the federal prosecutor acted in concert with vindictive state officials is also insufficient. *Benson*, 941 F.2d at 611. There is simply no evidence that the United States Attorney's office sought the indictment for any other reason than because Gil had violated federal criminal laws. Thus, Gil's claim of ineffective assistance of counsel based on this theory must fail. *Jarrett v. United States*, 822 F.2d 1438, 1443 (7th Cir.1987).

### 5. Failure to object to the photo

Gil next argues that Wagner was ineffective because he failed to object to the photo of cocaine that the government introduced into evidence. Contrary to Gil's position, the court finds that Wagner's decision to allow the government to use a photograph instead of requiring the government to produce all thirty-eight kilograms of the cocaine at trial was objectively reasonable and was a sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. The court will not second guess trial tactics that are rationally based. *United States v. Zarnes*, 33 F.3d 1454, 1473 (7th Cir.1994). Accordingly, Gil's claim of ineffective assistance of counsel based on this theory fails.

### 6. Stipulated testimony

Gil next argues that Wagner was ineffective because he stipulated to the amount of cocaine that was seized. There was no dispute as to the weight of the narcotics that was seized. Trial Tr. at 80–81. Wagner's decision to agree to the stipulated testimony was a tactical one. *United States v. Kennedy*, 797 F.2d 540, 543 (7th Cir.1986). As explained, the court will not second guess trial tactics that are rationally based. *Zarnes*, 33 F.3d at 1473. Accordingly, Gil's claim of ineffective assistance of counsel based on this theory fails.

### 7. Failure to investigate the gap in the tapes

Gil next argues that Wagner was ineffective because he failed to investigate

---

**3.** For the purposes of this discussion, the court assumes that Gil means that his federal indict- ment issued only after he refused to cooperate with federal authorities.

whether the tapes used in the trial contained a gap and whether the government's explanation for the gap was reasonable. Gil contends that "if the tapes were available in their entirety, those tapes would prove conclusively that Petitioner never had any intention or capacity to purchase the entire 38 kilos." Pet. at 10.

There are many problems with Gil's argument. The first is that the unrecorded conversations could not, as Gil claims, prove "conclusively" that he lacked the requisite intent and capacity. At best, the unrecorded conversations could have been conflicting evidence of his intent and capacity.

The second problem with Gil's argument is that his allegations are completely unsupported and conclusory. Gil never explains what the content of the conversations were or how they would have explained away all of the rest of the evidence which showed that Gil intended and had the capacity to purchase the entire thirty-eight kilograms. As the Seventh Circuit has often stated, conclusory allegations do not satisfy *Strickland's* prejudice prong. *United States v. Boyles*, 57 F.3d 535, 550 (7th Cir.1995).

The third problem with Gil's argument is that he only contends that the unrecorded conversations would prove that he neither intended nor had the capacity to purchase the entire thirty-eight kilograms of cocaine. He does not allege that the unrecorded conversations would prove that he neither intended nor had the capacity to purchase any cocaine. Thus, as the quantity of drugs was not an element of the offenses for which he was convicted, the unrecorded conversations would have been relevant only to Gil's sentence and not to his guilt. There was an overwhelming amount of evidence to support the court's finding that Gil could be held accountable for thirty-eight kilograms. Sent. Tr. at 6; *Gil*, 1995 WL 23136, at *5–11. Gil fails to explain how the unrecorded conversations would have negated that evidence.

The final problem with Gil's argument is that he alleges only that he "informed his counsel during preparations for and during the conduct of the trial itself that there were significant portions missing from the tapes." Pet. at 10. Gil never alleges that he told

Wagner that the unrecorded conversations would prove that he did not have the requisite intent or capacity to purchase the thirty-eight kilograms. Thus, given the content of the conversations that were recorded and what Gil allegedly told Wagner, the court finds that it was objectively reasonable for Wagner not to investigate further the content of the unrecorded conversations.

### 8. Failure to argue for a downward departure

 Gil's final argument is that Wagner was ineffective because he failed to move the court for a downward departure based on Gil's status as a deportable alien. Gil cites *United States v. Farouil*, 124 F.3d 838, (7th Cir.1997), in support of his argument.

The court rejects Gil's argument. As of the date of Gil's sentencing, the Seventh Circuit had "not yet addressed the issue of whether a defendant's status as a deportable alien is an appropriate matter for consideration when the district court is exercising its sentencing discretion," except in one limited context which was not applicable to the case at bar. *Farouil*, 124 F.3d at 846. The Seventh Circuit did not address this issue until a full three years and four months after Gil's sentencing proceeding. Thus, at the time of Gil's sentencing, the court finds that it was objectively reasonable for Wagner to focus his efforts on arguments that had a better chance at affecting the sentence imposed.

Wagner did just that. First, Wagner moved for, and the court granted, a downward departure based on the argument that Gil's criminal history category over-represented the seriousness of Gil's criminal history. Sent. Tr. at 7. Second, Wagner successfully convinced the court not to impose an additional two-point offense adjustment for being an organizer. Sent. Tr. at 5. Had Gil been given a two-point increase for being an organizer and not been given a downward departure for his criminal history category, the applicable guideline range would have been 235–293 months instead of 168–210 months, which was the actual applicable guideline range. U.S.S.G. Ch. 5, pt. A.

Thus, Wagner's performance at the sentencing proceeding was not deficient.

 Further, Gil has also failed to show that he was prejudiced by Wagner's alleged deficiency. The decision to depart downward based on a defendant's status as a deportable alien is discretionary. *Farouil,* 124 F.3d at 846–47. This court would not have exercised that discretion. Further, under the guidance of *United States v. Restrepo,* 802 F.Supp. 781, 793 (E.D.N.Y.1992), vacated, 999 F.2d 640 (2d Cir.1993), Gil would have only received a two-point reduction in his offense level. *United States v. Quiceno de la Pava,* No. 97·C 2801, 1998 WL 42449, at *2 (N.D.Ill. Jan.28, 1998). This two-point difference does not constitute a significant difference in Gil's sentence. *See Martin v. United States,* 109 F.3d 1177, 1178 (7th Cir. 1996). Thus, Gil has failed to prove that he was prejudiced by Wagner's failure to move for a downward departure based on Gil's status as a deportable alien.

### C. *Gil's other claims of constitutional violations*

In his petition, Gil claims that he is entitled to relief under § 2255 because his Fourth Amendment right to be free from unreasonable search and seizure, his Fifth Amendment right to due process, his Sixth Amendment right to a speedy trial, and his Fourteenth Amendment rights have been violated. All of these claims rest on Gil's claims that (1) his federal prosecution was a "sham prosecution" and (2) the cooperation between the State of Illinois and the federal government was·illegal.

Gil did·not raise any of these claims on his direct appeal. Thus, the government argues that Gil is barred from raising these claims in his § 2255 motion because he has procedurally defaulted. However, rather than going through an exhaustive procedural default analysis, the court simply rejects these claims on their merits. As explained above, the court rejects Gil's argument that his federal prosecution was a "sham prosecution." *See supra* Part II.B.2. Similarly, the· court has already explained that the cooperation between the state and federal authorities was "undeniably legal." *See supra* Parts II.B.2–3. Thus, Gil is not entitled to relief based on his claim that his Fourth, Fifth, Sixth, and Fourteenth Amendment rights have been violated.

### D. *Gil's request for an evidentiary hearing*

 In his § 2255 motion, Gil requests· the court to conduct an evidentiary hearing on the issues that he has raised. "Although a defendant has a right to file a motion under section 2255, his filing does not automatically give him the right to an evidentiary hearing." *Patel v. United States,* 19 F.3d 1231, 1234 (7th Cir.1994). Section 2255 does not require a hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. This has been interpreted to mean that a hearing is not required where the motion raises no legally cognizable claim, the allegations in the motion are unreasonably vague, conclusory, or incredible, or the factual matters raised by the motion may be resolved by the district court on the record before it. *Oliver v. United States,* 961 F.2d 1339, 1343 n. 5 (7th Cir.1992). Rule 8 of the Rules Governing § 2255 proceedings provides that the district court judge shall "determine whether an evidentiary hearing is required." *Patel,* 19 F.3d at 1235. If an evidentiary.hearing is not required, the judge "shall make such disposition of the motion as justice dictates." *Patel,* 19 F.3d at 1235.

In this case, the court has determined that an· evidentiary hearing is not needed to determine any of the issues raised by Gil in his § 2255 motion. The arguments made by Gil either are not legally cognizable, are too vague, conclusory or incredible, or present issues that can be resolved from the record. Accordingly, the court denies Gil's request· for an evidentiary hearing.

### III. CONCLUSION

For the foregoing reasons, the court denies petitioner Diego Gil's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 and denies his request for an evidentiary hearing.