In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3242

Rene Rodriguez,

Petitioner-Appellant,

v.

United States of America,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 97 C 426--Thomas J. Curran, Judge.

Argued September 26, 2001--Decided April 11, 2002


  Before Flaum, Chief Judge, and Coffey and
Manion, Circuit Judges.

  Manion, Circuit Judge.  In 1994, Rene
Rodriguez received a life sentence after
being convicted of conspiring to import
and distribute over 1,000 kilograms of
marijuana from Mexico to the United
States. Rodriguez moved to have his
sentence reviewed under 28 U.S.C. sec.
2255, claiming that he was denied his
Sixth Amendment right to effective
assistance of counsel. The district court
denied Rodriguez's sec. 2255 application
and he then filed a motion to amend the
judgment. While this motion was pending,
Rodriguez filed a motion to amend his
habeas pleadings to include a claim under
Apprendi v. New Jersey, 530 U.S. 466
(2000). The district court subsequently
denied both motions and granted Rodriguez
a certificate of appealability limited to
the ineffective assistance of counsel
claim. He then petitioned this court to
expand the issues upon which the
certificate was granted to include his
claim under Apprendi. We affirm the
district court's denial of Rodriguez's
sec. 2255 motion and deny his request to
expand the certificate of appealability
to include a claim under Apprendi.

I.  Background

  Rene Rodriguez was charged in a one-

count indictment with conspiracy to deliver over 1,000 kilograms of marijuana from 1989 through 1992, in violation of 21 U.S.C. sec.sec. 841(a)(1) & 846. In 1994, a jury convicted Rodriguez and the district court sentenced him to life in prison without the possibility of parole because of the quantity of marijuana involved in the count of conviction and because of his prior convictions for drug trafficking offenses. See 21 U.S.C. sec. 841 (b)(1)(A)./1 At trial, the government presented evidence of his conspiracy that included recorded telephone conversations between him and his co-conspirators, phone records, and testimony of the co-conspirators. Rodriguez's theory of his defense was that he was not involved in the conspiracy, but was merely attempting to steal money from the drug traffickers. The issue of drug quantity was not submitted to the jury during his trial, but was instead determined by the court by a preponderance of the evidence to be over 1,000 kilograms. This court affirmed the conviction and the sentence in United States v. Rodriguez, 67 F.3d 1312 (7th Cir. 1995), cert. denied, 517 U.S. 1174 (1996) (hereinafter Rodriguez I).

In Rodriguez I, we addressed Rodriguez's argument that the issue of drug quantity should have been submitted to the jury, and that the appropriate standard for determining drug quantity for sentencing purposes was beyond a reasonable doubt. See id. at 1322. We held that the district court, not the jury, should have decided drug quantity because it is not an element of the offense. Id. at 1317. This court also upheld the preponderance of evidence standard, noting that due process concerns were not implicated by the facts of that case where the Sentencing Guidelines incrementally increased time served based on drug quantity./2 Id. at 1322-23.

On April 22, 1997, Rodriguez filed a motion for collateral review under 28 U.S.C. sec. 2255 alleging a variety of constitutional violations, including that he had been denied effective assistance of counsel. His sec. 2255 motion did notcontain any allegations concerning the constitutionality of the standard of proof used to determine the drug quantity at sentencing. Nor did it include an allegation that the district court erred in failing to submit the issue of drug

quantity to the jury. Rodriguez's motion before the district court listed almost a dozen instances of counsel's alleged ineffectiveness, only two of which have been preserved for consideration in this appeal./3 First, Rodriguez maintains that he involuntarily waived his right to testify in his own defense because his attorney incorrectly advised him that if he took the stand his prior convictions for drug trafficking would be entered into evidence. Second, he alleges that during closing argument, his counsel effectively pleaded him guilty by improperly admitting that Rodriguez did possess, and agreed to deliver, ten ounces of marijuana. On December 31, 1998, without holding an evidentiary hearing concerning these issues, the district court entered judgment denying Rodriguez's sec. 2255 motion.

After the district court denied his habeas petition, Rodriguez filed a motion on January 14, 1999, to amend the denial of his habeas application under Fed. R. Civ. P. 59(e). The motion alleged a variety of errors in the transcriptions of surveillance tapes that were presented to the jury. Eleven months later, on December 6, 1999, while the motion to amend the judgment was still pending, Rodriguez filed a "Motion for Leave to Supplement/Amend the Pleadings." In this motion, he petitioned the district court to allow him to include a claim in his sec. 2255 petition that the issue of drug quantity should have been determined by the jury on a reasonable doubt standard./4 Rodriguez again petitioned the court to amend in February 2000 as a result of the Supreme Court's grant of certiorari in Apprendi v. New Jersey, 530 U.S. 466 (2000). Ultimately, in August 2000 the district court denied the Rule 59 motion, along with the petitions to amend. The district court then issued a certificate of appealability to Rodriguez, limited to his claims of ineffective assistance of counsel. Rodriguez appeals the district court's decision on his sec. 2255 application and petitions this court to expand the certificate of appealability to include his Apprendi claim.

II. Analysis

A. Apprendi Claim

On appeal of a district court's decision to grant or to deny an application for writ of habeas corpus, we review all questions of law de novo. Small v. Endicott, 998 F.2d 411, 414 (7th Cir. 1993). In order to appeal a district court's ruling on a writ of habeas corpus, an applicant is required to obtain a certificate of appealability. See 28 U.S.C. sec. 2253(c) (1)(B); Fed. R. App. P. 22(b)(1). Because the certificate in this case is limited to only the ineffective assistance claims, we will first address Rodriguez's petition to expand the certificate to include his claim under Apprendi. "A certificate of appealability may issue [by a district or circuit judge] . . . only if the applicant has made a substantial showing of the denial of a constitutional right . . . [and the certificate] shall indicate which specific issue or issues satisfy that showing." 28 U.S.C. sec. 2253(c); see also Williams v. Parke, 133 F.3d 971, 975 (7th Cir. 1997). Rodriguez fails to make this showing, and therefore his request to expand the certificate of appealability is denied.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a substantial showing of a denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). Here, the district court did not address the substantive issues underlying Rodriguez's proposed habeas claim under Apprendi, but instead denied his post-judgment motions that sought to raise that claim. When a district court denies a habeas claim on procedural grounds, a circuit court should only expand the certificate to include that claim if a prisoner at least demonstrates "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. at 484. "When a plain procedural bar is present and the

district court is free to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id. In this case, we find that Rodriguez cannot show the denial of a constitutional right because he is procedurally barred from raising his Apprendi claim.

First, Rodriguez is procedurally barred from pursuing his Apprendi claim on appeal because he failed to raise that claim in his sec. 2255 claim before the district court. In a habeas case, the "law is clear that any claim not presented to the district court is waived on appeal." Drake v. Clark, 14 F.3d 351, 355 (7th Cir. 1994) (internal citations omitted) (refusing to consider the arguments raised in petitioner's appeal from a denial of a writ of habeas corpus that were not presented to the district court). See also Valenzuela v. United States, 261 F.3d 694, 700 n. 2 (7th Cir. 2001) (stating that by failing to raise an issue in a sec. 2255 petition before the district court, a petitioner waived that issue on appeal); Shilcutt v. Gagnon, 827 F.2d 1155, 1161 (7th Cir. 1987) (declining to consider a Sixth Amendment claim because the petitioner did not raise it in his habeas petition before the district court). In Rittenhouse v. Battles, 263 F.3d 689, 694-95 (7th Cir. 2001), we addressed this precise issue. Rittenhouse petitioned this court to expand his certificate of appealability to include issues that he had not raised in the district court. Id. However, like Rodriguez, he had previously raised the disputed issues in his prior proceedings on direct appeal, but failed to raise them when he filed his petition for a writ of habeas corpus in the district court. Id. We refused to expand Rittenhouse's certificate because his failure to raise those issues in the district court constituted a waiver. Id. In a like manner, Rodriguez did not raise the Apprendi claim in his original sec. 2255 application, and it is therefore waived on appeal.

Rodriguez cannot rely on the timing of the Supreme Court's ruling in Apprendi to avoid a finding of waiver. While it is true that Rodriguez was tried and sentenced prior to Apprendi v. New

Jersey, 530 U.S. 466 (2000), we have held that prisoners in similar situations were not relieved of their duty to bring this type of claim in a timely manner. Our case law is "clear that the novelty of Apprendi does not constitute cause for failing to raise the issue earlier because 'the foundation for Apprendi was laid long before 1992.'" Valenzuela, 261 F.3d at 700 n. 2 (citing Garrott v. United States, 238 F.3d 903, 905 (7th Cir. 2001)). Furthermore, Rodriguez was obviously aware of the availability of a claim addressing the standard of review applied to sentencing factors as he himself raised this issue in his direct appeal. Nevertheless, he chose not to pursue it in his habeas petition./5

We next consider whether Rodriguez avoided a waiver, thus preserving his Apprendi issue for appeal, by filing a motion to amend his pleadings. Prior to moving to amend his sec. 2255 petition, Rodriguez filed a motion under Fed. R. Civ. P. 59 in January 1999 to alter or amend the judgment of the district court. The Rule 59 motion, and the accompanying affidavit from Rodriguez, alleged errors with the evidence presented at trial and did not include any claims that the trial court erred in using the preponderance of the evidence standard to determine the issue of drug quantity. In December 1999, while the Rule 59 motion was still pending and seven days after the Supreme Court granted certiorari in Apprendi v. New Jersey, 528 U.S. 1018 (1999), Rodriguez filed a motion to amend his pleadings to include an Apprendi claim. Rodriguez filed a second memorandum requesting amendment and argument on the Apprendi issue when Apprendi was decided in June 2000. Rodriguez argued that the maximum sentence he should have received for his conviction, in the absence of a jury finding on the issue of drug quantity, was 10 years under 21 U.S.C. sec. 841(b)(1)(D). Because he was sentenced to life imprisonment without the possibility of parole, under 21 U.S.C. sec. 841(b)(1)(A), he argues that he received a sentence in excess of the maximum statutory penalty, in violation of Apprendi.

The rules governing sec. 2255 do not deal with amendments for collateral review and therefore proposed amendments to sec. 2255 motions are governed by Fed.

R. Civ. P. 15(a). Johnson v. United States, 196 F.3d 802, 805 (7th Cir. 1999). Under Rule 15(a) a court may permit leave to allow amendment of pleadings even after a defendant's absolute right to amend has lapsed, "freely . . . when justice requires." The AEDPA allows a prisoner a full opportunity to seek collateral review, which means that "[a] prisoner receives one complete round of litigation, which as in other civil suits includes the opportunity to amend a pleading before judgment." Johnson, 196 F.3d at 805.

In this case, however, the district court entered a judgment denying Rodriguez's sec. 2255 application prior to his attempt to amend his pleadings. This is not fatal to Rodriguez's claim, as a court may grant a plaintiff's motion for leave to amend even after judgment had been entered. See, e.g., United States Labor Party v. Oremus, 619 F.2d 683, 692 (7th Cir. 1980). However, in this circuit, "'the presumption in favor of liberality in granting motions to amend [under Rule 15(a)] is reversed after judgment has been entered.'" Vicom Inc. v. Harbridge Merchant Services Inc., 20 F.3d 771, 785 n. 13 (7th Cir. 1994) (citing First Nat'l Bank v. Continental Ill. Nat'l Bank, 933 F.2d 466, 468 (7th Cir. 1991)). See also Amendola v. Bayer, 907 F.2d 760, 765 n. 1 (7th Cir. 1990) ("In this circuit, after a judgment has been entered, a party must have the judgment reopened pursuant to Federal Rule of Civil Procedure 59(e) or 60(b) and then request leave to amend pursuant to Rule 15(a)."); Twohy v. First Nat'l Bank, 758 F.2d 1185, 1196 (7th Cir. 1985) (noting that "several courts have recognized that justice may require something less in post-judgment situations than in pre-judgment situations under Rule 15(a)"). In this case the court denied both his motion to amend and his Rule 59 motion simultaneously and without comment. Whether or not to grant a defendant's motion to amend his complaint is a decision left to the discretion of the district court. Bethany Pharmaceutical Co. v. QVC, Inc., 241 F.3d 854, 861 (7th Cir. 2001). Under Rule 15, a court may deny the amendment due to undue delay, bad faith, dilatory motive, prejudice or futility. Id. at 860-61. In this case the court would have been free to deny the

motion based on either futility or delay.

A district court may properly deny a motion to amend as futile if the proposed amendment would be barred by the statute of limitations. King v. One Unknown Fed. Corr. Officer, 201 F.3d 910, 914 (7th Cir. 2000). Under AEDPA, a one-year statute of limitations applies to all federal habeas petitions. 28 U.S.C. sec. 2255 para. 6./6 In this case, Rodriguez's original claim was filed within AEDPA's statute of limitations, but his Apprendi claim in his motion to amend was filed 30 months after the deadline to file sec. 2255 motions expired. Under Fed R. Civ. P. 15(c), an amended complaint relates back to the date of the original complaint for purposes of tolling the statute of limitations where "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). In this case, the motion to amend will not be untimely if it relates back to the original sec. 2255 filing. We have not addressed Rule 15(c) in the context of a sec. 2255 motion, but we have noted the special considerations for post-finality motions that we must consider in light of AEDPA's limitations on multiple efforts to obtain collateral review. See Johnson at 804-05 (holding that post-finality motions can count as second or successive applications under 28 U.S.C. sec. 2255 para. 8, if the petition has reached a final decision). Four circuits have addressed this issue and each concluded that an untimely sec. 2255 claim will not "relate back" under Rule 15(c) unless the claim has "more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." Dean v. United States, 278 F.3d 1218, 1221 (11th Cir. 2002); see also United States v. Pittman, 209 F.3d 314 (4th Cir. 2000); United States v. Duffus, 174 F.3d 333 (3d Cir. 1999); United States v. Craycraft, 167 F.3d 451 (8th Cir. 1999). In order for an untimely claim to relate back, it "must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" Dean, 278 F.3d at 1221 (citing Pittman, 209 F.3d at 318 ("both time and type")); Duffus, 174 F.3d at 337 ("same set of

facts"); Craycraft, 167 F.3d at 457 ("same set of facts" and "both time and type")). In addition, these circuits have been uniform in their denial of amendments that would add a new claim or theory of relief. United States v. Thomas, 221 F.2d 430, 436 (3d Cir. 2000) (holding that Rule 15(c)(2) applies to sec. 2255 petitions insofar as amendments seek to clarify or amplify existing claims and not add entirely new claims); Pittman, 209 F.3d at 317 (affirming a denial of an amendment because it arose out of a separate occurrence); Craycraft, 167 F.3d at 457 (8th Cir. 1999) (affirming denial of a proposed amendment because the proposed claim was "distinctly separate" from claims already pleaded).

Rodriguez's claim clearly does not satisfy this standard. His original sec. 2255 application made no mention of the appropriate standard of review for sentencing factors that increase the maximum available sentence. Instead itfocused on ineffective assistance of counsel issues. The issues and facts underlying his Apprendi claim are unrelated to his ineffective assistance of counsel claims. Because there is no claim in Rodriguez's original petition that his amended claim could relate back to, it violates AEDPA's one-year statute of limitations. Because of this preclusion, it would not have been an abuse of discretion for the district court to deny his motion to amend as futile.

In addition, the court could have denied Rodriguez's application based on his delay in moving for the amendment. Rodriguez did not move to amend his complaint until after 29 months had passed from the time that the government filed its response and 32 months after the deadline to file a sec. 2255 motion under the AEDPA had expired. Additionally, Rodriguez was aware of the arguments he eventually presented in his motion to amend because he had raised those exact issues on direct appeal. See, e.g., Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1297 (7th Cir. 1993) (holding that failure to move to amend complaint until 25 months had passed, when the basis for the amendment was present at the time of filing the complaint and would have forced the nonmoving party to

conduct discovery, constituted undue delay). Rodriguez argues that a delay in requesting an amendment is not a sufficient basis to deny a motion to amend when the delay has not caused the opposing party undue prejudice. See Textor v. Board of Regents of N. Ill. Univ., 711 F.2d 1387, 1391-92 (7th Cir. 1993). In this case, Rodriguez argues, the government was on notice of the availability of this claim, and it was not prejudiced by the delay because it had briefed the issue when it was raised on direct appeal. However, based on the significant time lapse between the deadline to file sec. 2255 motions under the AEDPA, the availability of this claim at the time he filed his initial habeas application and the need for the government to reinvestigate this claim, it would not have been an abuse of discretion for the court to have denied this motion to amend based on delay. See Johnson, 196 F.3d at 805 (explaining that "delay is a standard reason for denying leave to amend")./7

Rodriguez argues that the time limits in sec. 2255 should be equitably tolled because he could not have raised an Apprendi claim in his petition to the district court. As we have already established, however, supra n. 1, Rodriguez was not precluded from raising this argument in his initial sec. 2255 motion. At oral argument, Rodriguez's counsel did state that he did not introduce the issue in his original petition due to fear of sanctions. We have noted on many occasions, however, that arguments raised for the first time at oral argument are waived. See, e.g., Ricci v. Arlington Heights, 116 F.3d 288, 292 (7th Cir. 1997); United States v. Beltran, 109 F.3d 365, 371 (7th Cir. 1997); Dovenmuehle v. Gilldorn Mortgage Midwest Corp., 871 F.2d 697, 701 n.5 (7th Cir. 1989). Also, Rodriguez did not cite, nor have we been able to find any case where a litigant on habeas review was sanctioned for relitigating issues which were raised and ruled upon on direct appeal.

Rodriguez has waived the Apprendi claim because he failed to raise it before the district court. Rodriguez's motions to the district court to amend his application to include an Apprendi claim do not cure the waiver of this issue

because the motions were properly denied due to the fact that they were late and did not relate back to his original petition. Rodriguez's inability to show that the district court erred in dismissing the motions to amend his sec. 2255 motion precludes him from establishing the denial of a constitutional right. Therefore, his motion to expand the certificate of appealability is denied.

B.  Ineffective Assistance of Counsel

This court reviews a district court's ruling on ineffective assistance of counsel de novo. Kitchen v. United States, 227 F.3d 1014, 1017 (7th Cir. 1996). In order to establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1994); and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." Id. at 694. See also United States v. Zarnes, 33 F.3d 1454, 1473 (7th Cir. 1994). In terms of the performance prong, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. Only those "who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ . . . ." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The burden for a defendant is high when he attempts to contend his counsel's trial strategy was ineffective because "Strickland builds in an element of deference to counsel's choices in conducting the litigation." Holman v. Gilmore, 126 F.3d 876, 881 (7th Cir. 1997). In order to establish prejudice under the second prong, the unprofessional errors of counsel must be so egregious "that the trial was rendered unfair and the verdict rendered suspect." Morrison, 477 U.S. at 374.

Rodriguez argues that he was denied his Sixth Amendment right to effective assistance of counsel when his attorney

advised him that if he testified, his prior convictions could be used to impeach his testimony. Rodriguez contends that this advice was incorrect because his prior conviction was inadmissible character evidence under Fed. R. Evid. 609. He maintains that his attorney compounded this error by failing to even argue that issue during a pretrial conference. This argument fails to satisfy either prong of the Strickland test.

First, Rodriguez cannot show that his counsel's advice concerning the impeachment value of his prior crime was unreasonable. Under Fed. R. Evid. 609, evidence that the accused has been convicted of a crime within ten years of the present offense punishable by more than one year in prison shall be admitted if the court determines that the "probative value of admitting this evidence outweighs its prejudicial value." Fed. R. Evid. 609(a)(1), (b); see, e.g., United States v. Mahone, 537 F.2d 922, 929 (7th Cir. 1976) (holding that prior to admitting evidence of a prior offense to be used for impeachment purposes, judges should hold a hearing on the matter and explicitly find that the prejudicial effect of the evidence will be outweighed by its probative value). Some of the factors that a judge should consider in making this determination are: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." United States v. Smith, 131 F.3d 685, 687 (7th Cir. 1997) (citing United States v. Hernandez, 106 F.3d 737, 739-40 (7th Cir. 1997)). In this case, Rodriguez's prior conviction was for possession with intent to distribute 400,000 Mandrax tablets in 1982, and thus, like he charged offense, involves the distribution of illegal drugs. See United States v. Harding, 525 F.2d 84, 90 (7th Cir. 1975) (noting that the similarity between a prior offense for possession of 80 pounds of marijuana with the present offense of the sale of one gram of cocaine created a strong risk of unfair prejudice). This prior conviction was also an important factor in determining Rodriguez's credibility if he

took the stand. In this case, Rodriguez's theory of defense was not that he was innocent of drug distribution, but that he did not intend to join the charged conspiracy. Thus, if he took the stand, the prior conviction's probative value for determining credibility would outweigh its prejudicial value for his propensity to commit the charged crime. See Harding, 525 F.2d at 88-90 (allowing evidence of a similar prior drug offense for the purpose of impeaching the credibility of the defendant but not for the purpose of showing a propensity to commit the charged offense); see also Smith, 131 F.3d at 687 (permitting the introduction of evidence of prior similar crimes as impeachment when credibility was a key issue). Therefore, Rodriguez cannot show that his counsel's advice was incorrect, much less unreasonable.

Rodriguez relies upon Nichols v. Butler, 953 F.2d 1550 (11th Cir. 1992), as holding that an attorney's improper advice concerning the right to testify can result in ineffective assistance of counsel. However, his reliance on this case is misplaced. In Nichols, the court found that a defendant received ineffective assistance of counsel under the Strickland factors when his counsel prevented him from testifying in his own defense. Id at 1554. Unlike the case at hand, the court found that the attorney in Nichols committed prejudicial error when he actually coerced his client not to testify by threatening to withdraw as counsel if he did take the stand. Id. at 1553. Rodriguez does not assert that his attorney coerced him not to testify, just that his attorney erred in advising him about the consequences of his testimony.

As further evidence of his counsel's deficient performance, Rodriguez cites a pretrial colloquy between his counsel and the trial court judge where his counsel failed to argue that the circumstances of the two crimes were so similar that the prior crime should be unavailable for impeachment. Because of his counsel's failure to argue the issue, and his advice not to testify because of the possibility of impeachment with the prior offense, he argues that he did not receive a fair trial because the waiver of his right to testify was unknowing and involuntary, citing United States v. Poe, 352 F.2d 639, 640-41 (D.C. Cir. 1965)

("defendant was deprived of his right to a fair trial when he did not testify, because his counsel misinformed him of the consequences of taking the stand").

However, Poe does not support Rodriguez's argument. In Poe, the court upheld a trial court's ruling that a defendant did not receive a fair trial when his attorney incorrectly advised his client that inadmissible evidence would be used to impeach to his testimony. Id. The court did not, however, hold that the defendant had been denied effective assistance of counsel under the Sixth Amendment. Id. at 641. Instead, the case set forth the rule that when the trial judge himself finds that a defendant has been denied a fair trial by reason of an action or inaction by counsel, that determination should not be disturbed unless clearly erroneous. Id. In addition, in that situation, prior to defendant's decision not to take the stand, the trial court judge held that the evidence that could have been used to impeach the defendant was inadmissible. See Poe v. United States, 233 F. Supp. 173, 175 (D.C., D.C. 1964). Here, the government indicated during a pretrial hearing that if Rodriguez testified, it intended to introduce evidence of his prior crimes. Unlike Poe, the judge indicated that the evidence would likely be admissible against Rodriguez, stating that "such a prior conviction may have more probative value for impeachment purposes, and, therefore, would tend to outweigh the prejudicial effect it would have on the matter . . . ." The trial judge, however, reserved judgment on the issue pending Rodriguez's decision to take the stand in his own defense. Thus it was probable, or at least undecided, that Rodriguez's past crimes could have been used to impeach his testimony. Failing to raise this argument, when it was likely to fail, cannot be deemed to be unreasonable behavior by an attorney. See United States v. Cooke, 110 F.3d 1288, 1301 (7th Cir. 1997) (holding that an attorney's performance was not objectively unreasonable due to a failure to raise a meritless objection).

Secondly, even if his counsel did err, Rodriguez cannot satisfy the second prong of Strickland by demonstrating that his counsel's alleged error rendered the result of the proceedings suspect. See

Strickland, 466 U.S. at 694. In order for Rodriguez to have testified without the threat of impeachment due to his prior crimes, his counsel would have had to successfully argue the issue under Fed. R. Evid. 609. We have already seen that this outcome was unlikely. If, somehow, Rodriguez had taken the stand, he argues that he would have presented evidence that he was trying to "rip off" his fellow co-conspirators. However, Rodriguez has not demonstrated that the absence of this testimony rendered the outcome of the trial suspect. In fact, Rodriguez's counsel was able to present this defense without Rodriguez's testimony by showing that Rodriguez kept $50,000 given to him by other co-conspirators but never delivered the hundreds of pounds of marijuana in exchange. It is true that a defendant's testimony "in his own trial is unique and inherently significant." Nichols, 953 F.2d at 1553. But this presumption, standing on its own, is not enough to show prejudice under Strickland.

Rodriguez's reliance on Nichols to show prejudice is also misplaced. In that case the court found that the lack of testimony by the defendant was prejudicial due to the scant amount of evidence presented by the prosecution and the lack of a defense presented by the defendant's counsel. Nichols, 953 F.2d at 1554. Unlike Nichols, however, Rodriguez was able to present a defense and the government introduced a significant amount of evidence demonstrating his guilt. This evidence included the testimony of co-conspirators concerning multiple drug transactions involving Rodriguez, phone records, and recorded phone calls made by Rodriguez in furtherance of the conspiracy. In one of those recorded calls he informed a co-conspirator that he was "sitting on" 450 pounds of marijuana. Thus, in contrast to Nichols, the government had substantial evidence of Rodriguez's guilt, and Rodriguez, on the other hand, was able to present additional evidence of his theory of defense. Therefore Rodriguez failed to establish that but for his counsel's alleged errors, the result of his trial would have been different.

Rodriguez also claims that his counsel's performance was substandard because he effectively entered a guilty plea by

conceding that Rodriguez delivered ten ounces of marijuana to Michael Cook, a former conspirator who was, at the time, in Texas cooperating with the government. During the trial, Cook testified that Rodriguez provided him with the ten ounces of marijuana as proof of the quality of his supply. Then, in closing arguments, Rodriguez's attorney conceded that this drug delivery had occurred, but argued that it was not in furtherance of the conspiracy but rather part of Rodriguez's scheme to defraud Cook and the other conspirators. Rodriguez argues that this argument in closing, accompanied by the failure of his trial counsel to request a jury instruction based on venue, ultimately required the jury to find him guilty./8 However, Rodriguez's counsel's concession did not require a finding of guilty on the conspiracy charge. Instead, it was a reasonable element of his strategy to show that Rodriguez was acting against the conspiracy.

Moreover, as this court has recognized, lawyers may reasonably acknowledge, as part of a trial strategy, that on a particular count the evidence against their client is overwhelming. See Underwood v. Clark, 939 F.2d 473, 474 (7th Cir. 1991) (holding that a counsel's admission of guilt during closing arguments was reasonable as a tactical decision to gain favor with the jury). Courts should not "second-guess trial tactics that are rationally based." United States v. Zarnes, 33 F.3d 1454, 1473 (citing United States v. Booker, 981 F.2d 289, 295 (7th Cir. 1992)). In assessing the performance of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (citation omitted). In this case, with the large amount of evidence presented against Rodriguez, this strategy appears quite reasonable. If the jury had believed his theory of defense, then he would not have been guilty of a crime involving over 1,000 kilograms of marijuana, but instead only guilty of a crime involving approximately 300 grams of marijuana. This would have decreased

his maximum sentence from life imprisonment to ten years. See 21 U.S.C. sec. 841(b)(1)(A) & (D). In fact, the trial court noted that Rodriguez's counsel's closing argument was "actually quite compelling." Because this tactic was reasonable as trial strategy, Rodriguez's claim fails under Strickland.

Finally, Rodriguez argues that we should remand this case to the district court to hold an evidentiary hearing on the issue of his counsel's effectiveness. Petitions under 18 U.S.C. sec. 2255 typically require an adversarial judicial hearing when factual disputes exist. Stokes v. United States, 652 F.2d 1, 2 (7th Cir. 1981) (citing United States v. Underwood, 577 F.2d 157 (1st Cir. 1978)). However, a federal prisoner does not have an automatic right to an evidentiary hearing under this statute, and a court may deny an evidentiary hearing "if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." Oliver v. United States, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (citing United States v. Frye, 738 F.2d 196 (7th Cir. 1984)). A hearing would not have aided the district court in ruling on Rodriguez's sec. 2255 motion. The court had sufficient information, based on its observations, the record, and the law, to determine that Rodriguez had received effective assistance of counsel. In addition, the judge who presided over the sec. 2255 motion also presided over Rodriguez's trial and sentencing. A judge who sits in this position is "uniquely suited to determine if a hearing [is] necessary." See Patel v. United States, 19 F.3d 1231 (7th Cir. 1994). Consequently, we affirm the district court's decision not to hold a hearing.

III. Conclusion

Rodriguez's petition to expand the certificate of appealability to include a claim under Apprendi is denied. He has failed to make a substantial showing of a denial of a constitutional right because he waived the Apprendi issue by failing to raise it in the district court. He was procedurally barred from raising the claim in post-judgment motions to amend his claim because an amendment would have

violated the statute of limitations on sec. 2255 motions. Also, because he cannot show that his counsel's performance fell below an objective standard of reasonableness or that his performance prejudiced Rodriguez's case, we affirm the district's court denial of his sec. 2255 application alleging ineffective assistance of counsel.

FOOTNOTES

/1 Rodriguez was convicted in 1977 of possession with intent to distribute heroin and in 1983 of conspiracy to possess with intent to distribute over 400,000 Mandrax tablets. See United States v. Rodriguez, 67 F.3d 1312, 1322, n.2 (7th Cir. 1995).

/2 Rodriguez raised the standard of review issue in his petition for rehearing of Rodriguez I to this court and in his petition for certiorari to the United States Supreme Court, both of which were denied. Judge Posner, in his dissent from the order denying a rehearing en banc, stated that the issue of what standard of proof is necessary in determining sentencing factors such as drug quantity was "a difficult and important question, worth the attention of the full court. . . ." United States v. Rodriguez, 73 F.3d 161, 162 (7th Cir. 1996) (Judge Posner was joined by Judge Diane Wood in his dissent and the panel voted 6-5 to deny the rehearing en banc).

/3 Rodriguez's other claims are waived because he failed to address them in his appellate brief. See Sere v. Board of Trustees of the Univ. of Illinois, 852 F.2d 285, 287 (7th Cir. 1988) ("It is not the obligation of this court to research and construct the legal arguments open to par- ties, especially when they are represented by counsel . . . . We consistently and evenhandedly have applied the waiver doctrine when appellants have failed to raise an issue in their opening brief." (internal quotations and citations omit- ted)).

/4 Rodriguez made this argument pursuant to a foot- note in United States v. Jones, 526 U.S. 227, 243 n.6 (1999). In Jones, the Court stated that "under the Due Process Clause of the Fifth Amend- ment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reason- able doubt."

/5 Rodriguez also makes several arguments in an attempt to utilize the "cause and prejudice"

exception to the waiver rule. In United States v. Lane, 267 F.3d 715, 721 (7th Cir. 2001), we held that "parties who can show that they had cause for failing to appeal directly and that they suffered prejudice from this omission" are not prohibited from raising claims in a habeas proceeding that were not raised on direct appeal. Id. (citing Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977)). We have not, however, applied this exception to waivers that resulted from failures to raise issues before the district court in ahabeas proceeding prior to raising them on appeal. See, e.g., Rittenhouse, 263 F.3d at 694. Even if we were to consider the availability of the cause and prejudice exception, Rodriguez has not demonstrated that he could satisfy the standard. Rodriguez attempts to show cause for his failure to raise the Apprendi claim by arguing that this issue was conclusively decided on direct appeal. He contends that, because we denied his Apprendi claim in his initial appeal, his argument would have necessarily failed on habeas review under the law of the case doctrine, citing Daniels v. United States, 26 F.3d 706, 711-12 (7th Cir. 1994) (holding that the law of the case doctrine applies to habeas proceedings). Because there was no change in the law between his direct appeal and habeas petition, he argues, the law of the case doctrine prevented him from raising this claim. However, "even when the law is against a contention, a litigant must make the argument to preserve it for later consideration." United States v. Smith, 241 F.3d 546, 548 (7th Cir. 2001) (citing Engle v. Isaac, 456 U.S. 107, 130 n. 35 (1982), stating that the fact that a legal argument would have been unpersuasive to a given court does not constitute "cause" for failing to present that argument). Even without a change in law, Judge Posner's comment in dissent to the denial of the rehearing, supra n. 2, indicated that on habeas review a court may have reexamined the Apprendi issue. Additionally, because neither the Supreme Court nor the Seventh Circuit has held that Apprendi is retroactively applicable on collateral attack, Rodriguez cannot show prejudice from his omission. See Smith, 241 F.3d at 548.

/6 Under 28 U.S.C. sec. 2255 para.8, a petitioner may file a second or successive application if it would rest upon "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." The Supreme Court has not yet ruled Apprendi retroactive for the purposes of second applications, Talbott v. Indiana, 226 F.3d 866, 869 (7th Cir. 2000), and therefore unless Rodriguez shows that his amendment relates back to his initial petition, it is premature.

/7 Additionally, instead of denying the motion to amend, the district court could have treated his motion for leave to amend as a motion for leave to file a second or successive sec. 2255 motion and transferred the motion to this court. See United States v. Espinoza-Saenz, 235 F.3d 501, 503 (10th Cir. 2000) (finding no error in district court's decision to transfer defendant's supplemental sec. 2255 motion to the appeals court as second or successive motion where defendant's motion could not relate back under Fed. R. Civ. P. 15(c) because it raised new claims). Because the Supreme Court specifically has not yet ruled Apprendi retroactive, we would deny such a motion.

/8 Rodriguez argues that because the admitted drug transaction occurred exclusively in Texas, his counsel was deficient in not requesting a jury instruction, or objecting to the lack of one, that an overt act in furtherance of the conspiracy must be proven to have been committed in the Eastern District of Wisconsin in order to establish proper venue. By not requiring a finding of venue, he argues, the jury could have relied solely on Rodriguez's conceded drug transaction in Texas as evidence of the existence of a conspiracy in Wisconsin. However, this court has already rejected Rodriguez's venue argument, holding that because Michael Cook traveled between Milwaukee and Houston in furtherance of the conspiracy, venue was proper. Rodriguez I, 67 F.3d at 1317. Rodriguez's counsel therefore cannot be held ineffective for failing to request a jury instruction that would not have been given.