**HILSTON PETERS, Plaintiff**

**v.**

**VIRGIN ISLANDS WATER AND POWER AUTHORITY, COMBUSTION ENGINEERING, INC., ALSTOM, INC., and GE INTERNATIONAL CORP.,[1] Defendants**

Case No. ST-11-CV-219

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

January 8, 2013

---

[1] Defendant GEII asserts that the correct name of GE International Corp. is GE International, Inc.

TERRI GRIFFITHS, ESQ., Lee J. Rohn and Associates, Christiansted, USVI, *Attorney for Plaintiff Hilston Peters*.

SUNSHINE S. BENOIT, ESQ., Bryant, Barnes & Blair, LLP, Christiansted, USVI, *Attorney for Defendant GE International, Inc.*

WARREN B. COLE, ESQ., Hunter, Cole & Bennett, Christiansted, USVI, *Attorney for Defendant Alstom, Inc.*

DUNSTON, *Judge*

## MEMORANDUM OPINION

(January 8, 2013)

Pending before the Court are (1) Defendant GE International, Inc.'s ("GEII") motion to dismiss/motion to quash,[2] (2) Defendant Alstom, Inc.'s motion to dismiss,[3] and (3) Plaintiff's motion to amend the pleadings.[4] For the following reasons, Defendant GEII's motion will be granted, Defendant Alstom's motion will be granted, and Plaintiff's motion to amend will be granted in part.

## FACTUAL AND PROCEDURAL HISTORY

On January 6, 2011, Plaintiff sustained severe burns while cleaning a boiler unit at the Virgin Islands Water and Power Authority's ("WAPA")

---

[2] GEII filed its motion on October 17, 2012; Plaintiff filed an opposition on November 16, 2012; and GEII filed a reply on November 20, 2012.

[3] Alstom filed its motion to dismiss the First Amended Complaint on September 27, 2012; Plaintiff filed an opposition on October 31, 2012; and Alstom filed a reply on November 7, 2012.

[4] Plaintiff filed his motion for leave to file a Second Amended Complaint on October 25, 2012, and Alstom filed an opposition on November 7, 2012.

Randolph Harley electrical power plant. Plaintiff filed a Complaint[5] against WAPA, and amended the pleadings[6] to add Defendants Combustion Engineering, Inc. ("CE"), Alstom, and GEII. On August 8, 2012, Plaintiff served GEII's resident agent[7] and served General Electric Company's ("GE") resident agent on August 17, 2012.[8] Plaintiff now requests leave to amend the pleadings once again to substitute GE for GEII and to make other changes.[9]

## ANALYSIS

### 1) GEII's motion to dismiss/motion to quash

GEII contests Plaintiff's service of process and requests that the Complaint be dismissed against GEII or that service on GEII be quashed. Plaintiff requests that the Court deny GEII's motion, but then acknowledges that he made a mistake serving GEII and corrected the mistake by amended the pleadings a second time to substitute GE for GEII. As it appears that the parties are in agreement that GEII should be dismissed from the Complaint, the Court will grant GEII's motion.

### 2) Alstom's motion to dismiss and Plaintiff's motion for leave to amend

Alstom moves to dismiss the First Amended Complaint pursuant to FED R. CIV. P. 12(b)(6) and opposes Plaintiff's request for leave to file the Second Amended Complaint on the basis of futility.

Rule 15(a) of the Federal Rules of Civil Procedure provides that "courts should freely give leave [to amend the pleadings] when justice so requires." When considering whether to exercise its discretion and give leave to amend, a court should be "guided by the policy that a party ought to be afforded the opportunity to test the claim on the merits."[10] The factors courts consider when evaluating a motion to amend include: delay

---

[5] The Complaint was filed on April 7, 2011.

[6] The First Amended Complaint was filed on July 16, 2012.

[7] In his response to GEII's motion, Plaintiff indicates that GEII was not served with the summons and the Complaint.

[8] Exhibit B to GEII's motion to dismiss.

[9] Plaintiff filed his Second Amended Complaint on October 22, 2012.

[10] *Daniel v. Government of the Virgin Islands*, 30 V.I. 134, 140 (D.V.I. 1994).

in bringing the motion, prejudice to the opposing party, and futility of the amendment.[11] An amendment can be considered futile if the proposed amendment is frivolous, would be barred by the statute of limitations, or would otherwise not survive a motion to dismiss.[12] Pleadings will not survive a motion to dismiss when there is a "failure to state a claim upon which relief can be granted" to the claimant.[13] When determining whether the allegations in a compliant are sufficiently pled, a court must engage in a three step inquiry:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." . . . . Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth". . . . Finally, "where there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[14]

A motion to dismiss a complaint should be denied if the factual allegations are "enough to raise a right to relief above the speculative level."[15] An amendment may also be denied if a party has had multiple opportunities to amend the pleadings and has not cured their deficiencies.[16]

Count II (negligence), Count III (strict liability), and Count IV (failure to warn) are directed against Alstom as well as other named Defendants. Count IV raises the theories of liability stated in Counts II and III and is essentially duplicative.

### a) Strict Liability Claim against Alstom

■ Under the Third Restatement of Torts, an individual or entity "engaged in the business of selling or otherwise distributing products who

---

[11] *See Newfound Management Corp. v. Sewer*, 34 F. Supp. 2d 305, 317, 40 V.I. 335 (D.V.I. 1999).

[12] *Choate v. Skinner*, 19 V.I. 399, 407 (Terr. Ct. 1983); *see also Rodriguez v. U.S.*, 286 F. 3d 972, 980 (7th Cir. 2002).

[13] FED. R. CIV. P. 12(b), made applicable to the Superior Court through SUPER. CT. R. 7.

[14] *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

[15] *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

[16] *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect."[17] A product may be defective "because of inadequate instructions or warnings . . . render[ing] the product not reasonably safe."[18] The inquiry to be made is whether there were "foreseeable risks of harm posed by the product [that] could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution."[19]

In his Second Amended Complaint, Plaintiff alleges that CE entered into a contract with WAPA to "design, engineer, develop, construct, build, manufacture, install, sell and/or supply to WAPA a Type VU-60 Boiler."[20] After CE designed, sold, and installed the boiler unit, CE provided performance testing and maintenance services on the boiler.[21] Alstom, which is also in the business of engineering and manufacturing boilers,[22] purchased CE's boiler and fossil fuel business in 2000 and continued to provide performance and maintenance services to WAPA's boiler.[23] Plaintiff asserts that CE and Alstom knew or had reason to know that the boiler discharged waste soot materials that needed to be manually collected and removed and that these soot materials would reach high temperatures dangerous to the lives of the individuals collecting and removing them.[24] Plaintiff also alleges that neither CE nor Alstom installed a lock on the boiler door or a temperature gauge on the unit[25] and

---

[17] RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 1.

[18] RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2. Plaintiff cites RESTATEMENT (SECOND) OF TORTS § 402A for the basis of his strict liability failure to warn cause of action, but the Third Restatement states that § 402A, "created to deal with liability for manufacturing defects, [can] not appropriately be applied to cases of design defects or defects based on inadequate instructions or warnings." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 1, cmt. a.

[19] RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2.

[20] Second Amended Complaint, ¶ 23.

[21] Id., ¶¶ 24 and 26.

[22] Second Amended Complaint, ¶ 47.

[23] Id., ¶ 26.

[24] Id., ¶¶ 31 and 32.

[25] Id., ¶¶ 51 and 52.

did not provide warnings or maintenance instructions regarding the operation and cleaning of the boiler.[26]

Plaintiff also asserts the following relevant legal conclusions: (1) that boiler was sold and supplied to WAPA in a defective condition,[27] and (2) that Alstom is liable for: (a) all acts and omissions of CE as a successor in interest, (b) Alstom's failure upgrade the boiler in light of Alstom's opportunity to do so during its continued maintenance, testing, and inspections of the boiler,[28] and (c) Alstom's failure to provide adequate warnings and maintenance instructions.[29]

 The Court notes that Plaintiff's factual allegations are entitled to an assumption of truth while his legal conclusions are not.[30] In addition, the Third Circuit has indicated that "it is a well-settled rule of corporate law, where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including the torts, of the transferor."[31] This general rule of successor nonliability has four generally recognized exceptions, under which the purchasing corporation may be liable: (1) if it assumes liability, (2) if it mergers or consolidates with the selling corporation, (3) where the sale of assets is fraudulent and done with the intention to escape liability, and (4) when the purchasing corporation is a mere continuation[32] of the selling

---

[26] *Id.*, ¶ 40.

[27] *Id.*, ¶60.

[28] *Id.*, ¶ 30.

[29] *Id.*, ¶¶ 36 and 37.

[30] *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' ") (citations omitted).

[31] *Polius v. Clark Equipment Company*, 802 F.2d 75, 77 (3d Cir. 1986) (citing 15 W. Fletcher, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS, § 7122 (Perm. Ed. 1983)).

[32] In determining whether a business is a "mere continuation" of its predecessor, several factors are relevant, including "a common identity between the officers, directors, and stock-holders of the selling and purchasing companies, and the sufficiency of the consideration running to the seller corporation in light of the assets being sold." *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 572 (9th Cir. 2012); *see also Heritage Realty Managment, Inc. v. Symbiot Snow Management Network, LLC*, C.A. No. 06-47, 2007 U.S. Dist. LEXIS 72818, *12 (W.D. Pa. 2007) (citing *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 468 (3d Cir. 2006)).

corporation.[33] In asserting that Alstom is a "successor in interest" to CE, Plaintiff fails to invoke any of the exceptions to the general rule for successor nonliability.[34]

 Similarly, the fact that Alstom is the successor corporation to CE does not impose upon Alstom a duty to upgrade the boiler. The majority of jurisdictions do not impose a duty to upgrade a product not defective when sold.[35] When a plaintiff claims that a product is defective when sold, as Plaintiff has alleged,[36] the claim is a defective design claim, which can be brought under a theory of negligence or strict liability.[37] Moreover, the duty to upgrade is "an example of a post-sale obligation imposed on a manufacturer,"[38] in determination of which the finder of fact examines "what the manufacturer knew or should have known at the time the product was sold."[39]

 Plaintiff has alleged that CE, not Alstom, was the manufacturer of the boiler. As Plaintiff has failed to plead facts suggesting that at least one of exceptions to the general rule of successor nonliability is applicable, no duty to upgrade can be imposed upon Alstom under a theory of strict liability or negligence.

 Moreover, "succession alone does not generate a duty to warn."[40] RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 is applicable to "the seller or other distributor, or a predecessor in the commercial chain

---

[33] *Id.*, at 78.

[34] *See also Brockway v. JP Morgan Chase Bank*, No. 11 cv 2982 JM, 2012 U.S. Dist. LEXIS 148129, *7 (S.D. Cal. 2012) (motion to dismiss granted because plaintiff "fail[ed] to set forth sufficient allegations to depart from the general rule that a successor in interest is not liable for the torts of an assignor").

[35] *Ostendorf v. Clark Equipment Company*, 122 S.W.3d 530, 534 (Ky. 2003) (citing 47 A.L.R. 5th 395).

[36] Second Amended Complaint, ¶ 46.

[37] *Ostendorf*, 122 S.W.3d at 535. As the *Ostendorf* court stated, the duty to upgrade is "superfluous in light of existing negligence and products liability doctrines" and there is "no good reason to create an independent duty to retrofit" or upgrade. *Id.* at 535 and 537.

[38] *Id.* at 536.

[39] *Id.* at 535.

[40] *Polius*, 802 F.2d at 84.

of distribution." Plaintiff has failed to allege facts indicating that Alstom falls into any of these categories.[41,42]

Construing the Second Amended Complaint in the light most favorable to Plaintiff, the factual allegations fail to state a strict liability claim upon which relief can be granted, and it would be futile to permit Plaintiff to amend his pleadings. Accordingly, Plaintiff's strict liability claim against Alstom as described in Count III and in Count IV will be dismissed without further leave to amend the pleadings.

### b) Negligence Claim against Alstom

 Plaintiff asserts that his cause of action for negligent failure to warn is embodied in RESTATEMENT (SECOND) OF TORTS § 388,[43] which provides that an individual or entity that:

> supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows or has reason to know that the chattel is or is likely

---

[41] Plaintiff's claim would also fail under RESTATEMENT (SECOND) OF TORTS § 402A, as Plaintiff did not allege that Alstom sold the boiler to WAPA.

[42] The Court notes that although neither party raised the issue, *Polius* does make reference to other Circuit Court of Appeals cases that have developed a doctrine establishing a successor's liability when there is evidence of a continuation of the relationship between the successor corporation and the customers of the predecessor corporation. *Polius*, 802 F.2d at 84. Some of the factors to be considered are: "the succession of service contracts, coverage of the particular machine by a contract, service of that machine by the successor, and the successor's knowledge of the defect and of the machine's location." *Id.* The Court notes that the Third Circuit's reference to the duty to warn in the context of successor service contracts was dicta and not central to the holding of the case. As the Third Circuit stated, it "would leave to another day whether the duty to warn [could] be imposed on a successor such as [Appellant]." *Id.* The Third Circuit also stated that the "successor corporation's liability stems not from its status as a successor, but from its establishment of a relationship with the customer that imposes certain duties and responsibilities." *Id.* Where a duty to warn would attach in a circumstance involving a service contract, this duty to warn would sound in negligence, and not in strict liability. *See, e.g., Flowers v. Lea Power Partners, LLC*, No. 09-CV-569, 2012 U.S. Dist. LEXIS 67360, *14 (D.N.M. 2012) ("[p]roviding negligent services may trigger ordinary negligence or breach of contract actions, . . . but it does not form the basis for actions in strict liability").

[43] *In re Manbodh Asbestos Litigation Series*, 47 V.I. 215, 226 (V.I. Super. Ct. 2005).

to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Although Plaintiff has alleged no facts indicating that Alstom supplied the boiler directly to WAPA or through a third person, Plaintiff asserts that RESTATEMENT (SECOND) OF TORTS § 388 is applicable to Alstom as a successor in interest to CE. As stated above concerning Plaintiff's strict liability claims, "succession alone does not generate a duty to warn."[44] Considering that the Third Circuit has expressly rejected the continuity of the enterprise rule,[45] Alstom cannot be deemed to be a supplier of chattel for the purposes of § 388.[46]

Even assuming, *arguendo*, that RESTATEMENT (SECOND) OF TORTS § 388 is applicable to Alstom, when the Second Amended Complaint is construed in the light most favorable to Plaintiff, Plaintiff has pled no facts suggesting that he was ignorant, or an ordinary worker in his position would have been ignorant, of the boiler's dangerous qualities that would satisfy the requirements of § 388(b). As a result, Plaintiff's negligence claim against Alstom would fail to survive a motion to

---

[44] *Polius*, 802 F.2d at 84.

[45] Under this theory of liability, a successor corporation that retains the assets and general business operation of the predecessor corporation may assume the liabilities of the predecessor "ordinarily necessary for normal business operations." *Id.* at 79.

[46] The Court acknowledges that under other sections of the Restatement, which Plaintiff has failed to cite, an independent contractor who "makes, rebuilds, or repairs a chattel for another . . . [may be] subject to the same liability as if he supplied the chattel." RESTATEMENT (SECOND) OF TORTS § 403. See also RESTATEMENT (SECOND) OF TORTS § 404 ("[o]ne who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels"). A manufacturer of chattel is subject to general liabilities common to all suppliers of chattel, *See* RESTATEMENT (SECOND) OF TORTS § 394. As a result, both §§ 403 and 404 invoke § 388. In addition, both §§ 403 and 404 aptly describe the duties and responsibilities *Polius* referred to concerning service contracts with a predecessor's customers. Notwithstanding, an entity that provides maintenance services may be treated as a supplier of chattel and subject to liability for a failure to perform a duty to warn only if a plaintiff alleges facts that address all the elements described in RESTATEMENT (SECOND) OF TORTS § 388.

59

dismiss,[47] and granting Plaintiff leave to amend his Complaint would be futile. Accordingly, Plaintiff's negligence claim against Alstom as described in Count II and in Count IV will be dismissed without leave to further amend the pleadings.

### C) Remaining Claims of the Second Amended Complaint

As the other Defendants have not challenged Plaintiff's Second Amended Complaint, Plaintiff will be granted leave to amend his pleadings as to the remaining Defendants.

An Order consistent with this Opinion shall follow.

---

[47] See, e.g., Lapidus v. NCL America LLC, No. 12-21183-CIV, 2012 U.S. Dist. LEXIS 82720, *7 (S.D. Fla. 2012) (motion to dismiss granted because amended pleadings were "fundamentally flawed" as plaintiff failed to allege any facts to support that there was a danger that (1) defendant knew about; (2) was not open and obvious to plaintiff; and (3) that defendant should have reasonably foreseen could cause, and did cause, plaintiff's injury).